UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CASEY OJEDA, individually and on behalf of other persons similarly situated who were employed by VIACOM INC., MTV NETWORKS MUSIC PRODUCTION INC., MTV NETWORKS ENTERPRISES INC.,<br><br>                                         Plaintiffs,<br><br>        against<br><br><br>VIACOM INC., MTV NETWORKS MUSIC PRODUCTION INC., MTV NETWORKS ENTERPRISES INC.,<br><br><br>                                  Defendants. | Case No. 13 Civ. 5658 (JMF) |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR COURT AUTHORIZED NOTIFICATION TO THE COLLECTIVE, PURSUANT TO 29 U.S.C. § 216(B)

VIRGINIA & AMBINDER, LLP
Lloyd R. Ambinder
LaDonna M. Lusher
Suzanne B. Leeds
111 Broadway, Suite 1403
New York, New York 10004
Tel: (212) 943-9080
Fax: (212) 943-9082
lambinder@vandallp.com

LEEDS BROWN LAW, P.C.
Jeffrey K. Brown
Michael A. Tompkins
Daniel H. Markowitz
One Old Country Road, Suite 347
Carle Place, New York 11514
Tel: (516) 873-9550
jbrown@leedsbrownlaw.com

*Attorneys for Plaintiff and the Putative Class*

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES……………………………………………………………..iii

PRELIMINARY STATEMENT……………………………………………………………1

FACTUAL BACKGROUND………………………………………………………………..2

ARGUMENT……………………………………………………………………......7

I)    COURT AUTHORIZED NOTICE IS LIBERALLY GRANTED AND PLAINTIFFS'
      BURDEN IS MINIMAL……………………………………………………………9

II)   PLAINTIFFS AMPLY MEET THE MINIMAL BURDEN FOR COURT
      AUTHORIZED NOTICE………………………………………………………….11

   A) Plaintiffs and Members of the Putative Collective Were All Similarly Subjected to
      Defendants' Common Policy and Plan to Misclassify Them as Unpaid Interns…………11

   B) Plaintiffs' Declarations and Pleadings State That They And Their Co-Workers Were Not
      Paid Minimum Wages As Required By The  FLSA……………………………….......13

CONCLUSION ……………………………………………………………..……..14

## TABLE OF AUTHORITIES

**PAGE**

Barrentine v. Arkansas-Best Freight Sys. Inc.,
450 U.S. 728 739 (1981)……………………………………………………………………………..1

Braunstein v. Eastern Photographic Lab.,
600 F.2d 335 (2d Cir. 1978)……………………………………………………………………8

Da Silva v. Bennet Street Development Corp.,
No. 05 Civ. 2989 (ARR)(MDG), 2010 U.S. Dist. LEXIS 112832 (E.D.N.Y. Sept. 24, 2010)…...1

Diaz v. S&H Bondi's Dep't Store, Inc.,
No. 10 Civ. 7676 (PGG), 2012 U.S. Dist. LEXIS 5683 (S.D.N.Y. Jan. 17, 2012)…………...2, 12

Epps v. Oak St. Mortg. LLC,
2006 U.S. Dist. LEXIS 31896 (M.D. Fla. May 22, 2006)……………………………………….9

Fasanelli v. Heartland Brewery, Inc.,
516 F.Supp.2d 317, 322 (S.D.N.Y. 2007)……………………………………………………….12

Glatt v. Fox Searchlight Pictures Inc.,
No. 11 Civ. 6784 (WHP), 2013 U.S. Dist. LEXIS 82079 (S.D.N.Y. June 11, 2013)..............6, 11

Glatt v. Fox Searchlight Pictures, Inc.,
No. 11 Civ. 6784 (WHP), 2013 U.S. Dist. LEXIS 121964 (S.D.N.Y. Aug. 26, 2013)………….11

Hallissey v. Am. Online, Inc.,
No. 99 Civ. 3785 (KTD), 2008 U.S. Dist. LEXIS 18387, (S.D.N.Y. Feb. 19, 2008)…………...10

Hoffmann v. Sbarro,
982 F.Supp. 249 (S.D.N.Y. 1997)…………………………………………....................7, 8, 13

Hoffmann-La Roche, Inc. v. Sperling,
493 U.S. 165 (1989)……………………………………………………………………………8

Iglesias-Mendoza v. La Belle Farm, Inc.,
239 F.R.D. 363 (S.D.N.Y.2007)……………………………………………………………2, 9, 13

Khamsiri v. George & Frank's Japanese Noodle Rest. Inc.,
2012 U.S. Dist. LEXIS 76660 (S.D.N.Y. June 1, 2012)………………………………………..8

Lopez v. 953 Assocs. LLC,
280 F.R.D. 113 (S.D.N.Y. 2011)……………………………..…………………………………10

Lynch v. United Servs. Auto. Ass'n,
491 F. Supp. 2d 357 (S.D.N.Y. 2007)………………………………………………….7

Masson v. Ecolab, Inc.,
No. 04 Civ. 4488 (MBM), 2005 U.S. Dist. LEXIS 18022 (S.D.N.Y. Aug. 17, 2005)…………..10

Mendoza v. Casa De Cambrio Delgado, Inc.,
No. 07 Civ. 2579 (HB), 2008 U.S. Dist. LEXIS 61557 (S.D.N.Y. Aug. 12, 2008)……………..12

Nationwide Mut. Ins. Co. v. Darden,
503 U.S. 318, 112 S. Ct. 1344 (1992)…………………………………………………..1

Paguay v. Barbasso, Inc.,
No. 11 Civ. 6266 (LTS)(HBP), 2012 U.S. Dist. LEXIS 99252 (S.D.N.Y. July 17, 2012)…...9, 13

Patton v. Thomson,
364 F.Supp.2d 263 (E.D.N.Y. 2005)……………………………..………………………….8

Pendlebury v. Starbucks Coffee Co.,
2005 U.S. Dist. LEXIS 574 (S.D. Fla. Jan. 3, 2005)……...............................................9

Realite v. Ark Restaurants Corp.,
7 F.Supp.2d 303, 307 (S.D.N.Y. 1998)………………………………………………….12

Salomon v. Adderley Indus.,
847 F. Supp. 2d 561 (S.D.N.Y. 2012)……………..…………………………………9, 10

Sexton v. Franklin First Financial, LTD,
No 08 Civ. 04950 (JFB)(ARL), 2009 Dist. LEXIS 50526 (E.D.N.Y. June 16, 2009)…………..12

Wang v. Hearst Corporation,
No. 12 Civ. 793, (HB), 2012 U.S. Dist. LEXIS 97043 (S.D.N.Y. July 12, 2012)…………..11, 12

Wang v. Hearst Corporation,
12 Civ. 793 (HB), 2012 U.S. Dist. LEXIS 120885 (S.D.N.Y. Aug. 24, 2012)…………………11

Young v. Cooper Cameron Corp.,
229 F.R.D. 50 (S.D.N.Y. 2005)………………………..…………………………………...10

## PRELIMINARY STATEMENT

Virginia & Ambinder, LLP and Leeds Brown Law, P.C. represent Named Plaintiff Casey Ojeda, opt-in Plaintiff Nicole Rosinsky and the putative class ("Plaintiffs") in the instant wage and hour class action litigation.  Plaintiffs initiated this action to recover unpaid minimum wages pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206 and 216(b)[1], for work they performed as unpaid interns on behalf of Viacom Inc., MTV Networks Music Production Inc., and/or MTV Networks Enterprises Inc. (hereinafter as "Viacom" or "Defendants").

Congress enacted the FLSA as a remedial measure "to protect all covered workers from substandard wages and oppressive working hours, labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for the health, efficiency and general well-being of workers." Barrentine v. Arkansas-Best Freight Sys. Inc., 450 U.S. 728 739 (1981); 29 U.S.C. § 202(a); Da Silva v. Bennet Street Development Corp., 2010 U.S. Dist. LEXIS 112832, 5 (E.D.N.Y. Sept. 24, 2010).  In light of this remedial purpose, the FLSA broadly defines "employ" as "to suffer or permit to work." 29 U.S.C. 203(g).  The "striking breadth" of this definition "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles.'" Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 326, 112 S. Ct. 1344 (1992) (citing Rutherford Food Corp. v. McComb, 331 U.S. 722, 728 (1947)).  Considering this broad definition, Plaintiffs allege that they performed work as employees— work that unquestionably benefited the Defendants— and that the Defendants misclassified them as exempt from minimum wage requirements.

Plaintiffs make the instant application simply to request court-authorized notice be published to the putative collective to notify them of the pendency of this action and of their

---

[1] Plaintiffs also brought claims under New York Labor Law §§ 650 *et seq* and 663; New York Labor Law § 190 *et seq*.; and 12 New York Codes, Rules and Regulations § 142-2.1.

rights under the FLSA. *See e.g.* Diaz v. S&H Bondi's Dep't Store, Inc., 10 Civ. 7676 (PGG),

2012 U.S. Dist. LEXIS 5683, *7 (S.D.N.Y. Jan. 17, 2012) (quoting Hoffman v. Sbarro, Inc., 982

F. Supp. 249, 260 (S.D.N.Y. 1997) (additional citations omitted).  "In contrast to the 'opt-out'

procedure of the Rule 23 class action, proposed class members to a FLSA representative action

must 'opt in' by filing a written consent with the court." Iglesias-Mendoza v. La Belle Farm,

Inc., 239 F.R.D. 363, 367 (S.D.N.Y. 2007).  The three year statute of limitations for an FLSA

claim runs from the date a non-Named Plaintiff "opts-in" to the action.[2]  In light of the fact that

the statute of limitations for an individual's FLSA claim continues to run even after a lawsuit is

commenced, courts routinely endorse court-authorized notice early in the litigation to notify

individuals about their FLSA claims and ensure that their rights do not expire during the

discovery period.

Accordingly, Plaintiffs seek an Order pursuant to 29 U.S.C. § 216(b), authorizing

Plaintiffs to send notice to the following similarly situated individuals:

> All current and former interns of Viacom Inc., MTV Networks Music Production
> Inc., and/or MTV Networks Enterprises Inc., engaged in an internship program
> from August 13, 2007 through the present. Corporate officers, shareholders,
> directors, and administrative employees are not part of the defined collective.

For the reasons set forth below, Plaintiffs' motion should be granted.

## FACTUAL BACKGROUND

In contravention with the fundamental spirit and purpose of the FLSA, Defendants

engaged in an unlawful scheme to require Plaintiffs to provide free labor that undeniably

benefited Defendants. In clear violation of minimum wage requirements, Defendants

misclassified Plaintiffs as unpaid interns and refused to pay them *any* wages for this work.

Defendants exploited Plaintiffs by having them complete work customarily performed by

---

[2] The FLSA differs from certification of a Rule 23 class action where the statute of limitations is six years, and
where class members' claims run from the date the lawsuit was filed.

Defendants' paid employees, but without compensation.  As a result, Defendants were able to increase their profits by obtaining the benefit of free labor, and hiring unpaid workers to complete necessary tasks.

Plaintiffs allege that Defendants uniformly enforce these unlawful policies and practices against unpaid interns at all of Defendants' locations.  As evidenced by Defendants' internship materials and various postings on internet websites, interns are all subject to identical policies, under one centralized internship program.

Viacom's "College Relations" Department located in New York City oversees the entire internship program, regardless of department or geographic location. [*See* Internship Program Guide, pg. 2 "College Relations Team"; pg. 3-5, listing of all Viacom departments, annexed to the Declaration of Lloyd R. Ambinder ("Ambinder Dec.") as Exhibit A.]  Viacom distributes the same "Internship Program Guide" to all interns, which sets forth the company-wide procedures and policies. [*See,* e.g. Ex. A, Internship Program Guide.]  Further substantiating the centralized nature of the internship program, the solitary Guide provides department location information for the New York, California, Florida, Illinois, Detroit, Michigan, Arkansas, Minnesota, and Tennessee offices. [Ex. A, pg. 15-18]. Regardless of department or location, there is one internal telephone directory. [Ex. A, pg. 19]. The Guide also establishes uniform policies that all interns must follow, such as procedures for using the telephone, faxing, photocopying, and connecting to the Viacom network. [Ex. A, pg. 12-14]. The Guide also provides general "Internship Good Practice Tips" for all interns. [Ex. A, pg. 20].

Regardless of geographic location or department, all interns are required to attend the same orientation session. [Ex. B, September 20, 2011 College Relations Memo]. Interns working in locations other than New York, such as Arkansas, Chicago, Detroit, etc. attend the same

3

orientation session as the New York interns via teleconference. [Ex. B, "Next steps"].   All

interns abide by the same rules, such as working a "minimum of 2 full days for a minimum of 10

full weeks." [Ex. B, "Important tips to remember"].

As further evidence of Viacom's uniform policies and practices regarding interns, if an

individual is interested in an internship position at Viacom, regardless of location or department,

there is one centralized website with a description of the internship program. [*See* webpage

regarding Viacom Internship Programs, annexed as Ex. C[3]]. The interns are all subject to the

same policies and requirements, such as "interns must be available for a minimum of 10 weeks"

and "typical business hours are 9:30AM to 5:30PM." [*See e.g.* Ex. D-1, New York Internships

webpage; D-2, Chicago, IL Viacom Internships webpage; D-3 Santa Monica, CA Internships

webpage; D-4 Miami Beach Internships webpage[4]]. If an individual is interested in applying for

an internship position at Viacom, he/she is directed to the same internship application, regardless

of location or department. [*See* Viacom Internship Application, annexed as Ex. E[5]].

Notably, in 2014, Viacom changed its internship policies, and interns are now paid "at a

standard competitive hourly rate" for their work. [Ex. C, Internship Programs][6]. Like employees,

Viacom's policies regarding harassment, equal employment opportunity and dating in the

workplace apply to interns. [Ex. A, Internship Program Guide, pg. 10]. The Internship Guide

further advises that Viacom "subsidizes the food…for all of its employees"—including interns.

[Ex. A, pg. 21]. Like employees, interns are required to carry Viacom ID cards at all times. [Ex.

---

[3] Internship Programs accessed at: http://jobhuntweb.viacom.com/viacom/taleo/internships.html
[4] Internship webpages accessed at: http://jobhuntweb.viacom.com/viacom/taleo/newyork.html;
http://jobhuntweb.viacom.com/viacom/taleo/chicago.html;
http://jobhuntweb.viacom.com/viacom/taleo/santamonica.html;
http://jobhuntweb.viacom.com/viacom/taleo/miami.html
[5] Internship application accessed at:
http://ch.tbe.taleo.net/CH05/ats/careers/apply.jsp?org=MTVNETWORKS&cws=6&rid=6247
[6] Although Viacom has changed its intern compensation policies, it is unclear whether interns are now paid at a rate
in compliance with the statutory minimum wage rate.

A, pg. 9]. Most importantly, Viacom interns provide the same work as paid employees.

By way of example, Named Plaintiff Casey Ojeda was employed by Viacom from approximately September 2011 through January 2012 as an unpaid intern in the Mobile Development Department. [*See* Declaration of Casey Ojeda ("Ojeda Dec."), annexed as Ex. F, ¶ 3]. Throughout the course of his employment, Ojeda routinely worked three days each week, from approximately 9:00 a.m. until 5:00 p.m. [Ex. F, Ojeda Dec., ¶ 4]. Ojeda's typical duties consisted of updating and rebooting the website, coding, creating weekly spreadsheets, and program design. [Ex. F, Ojeda Dec., ¶ 6]. Ojeda was already skilled at web design and coding before his internship. [Ex. F, Ojeda Dec., ¶ 7]. Ojeda performed the same work as paid employees in his department. Id. Ojeda was not paid any wages for this work. [Ex. F, Ojeda Dec., ¶ 5]. Aside from one initial intern orientation meeting, Viacom did not provide Ojeda with any formal training sessions or educational seminars. [Ex. F, Ojeda Dec., ¶ 8]. Ojeda recalls that hundreds of interns from various departments within Viacom attended the initial orientation meeting. [Ex. F, Ojeda Dec., ¶ 9].

Ojeda's claims are corroborated by the sworn testimony of opt-in Plaintiff Nicole Rosinsky. [*See* Declaration of Nicole Rosinsky ("Rosinsky Dec."), annexed as Ex. G]. Rosinky was employed by Viacom as an intern in the New York office in the Human Resources Department ("HR") from approximately June 2012 through August 2012. [Ex. G, Rosinsky Dec., ¶ 3]. While employed by Viacom, Rosinsky typically worked four days each week, from 9:30 a.m. until 5:30 p.m., without any compensation. [Ex. G, Rosinsky Dec., ¶¶ 4, 5]. Rosinsky's typical duties consisted of information analysis, data entry, creating charts, and collecting data. [Ex. G, Rosinsky Dec., ¶ 7]. Rosinsky performed similar work as paid employees in her department. [Ex. G, Rosinsky Dec., ¶ 8]. In fact, she recalls sometimes working longer hours

5

than the paid employees. Id. Aside from an initial orientation meeting, Viacom did not provide Rosinsky with any formal training sessions or educational seminars. [Ex. G, Rosinsky Dec., ¶ 11]. Rosinsky recalls observing hundreds of interns from various departments in attendance at the initial orientation. [Ex. G, Rosinsky Dec., ¶ 12].

Ojeda and Rosinsky both attested that they performed free labor that benefited Viacom while they only received the type of benefits one would receive from a regular job, such as being able to list Viacom on a resume. [Ex. F, Ojeda Dec., ¶¶ 5-7, 11, 15; Ex. G, Rosinsky Dec., ¶¶ 5, 7-8, 14, 18]. These individuals performed the work of paid employees, and without the free labor they provided, Viacom would have had to hire additional paid employees. [Ex. F, Ojeda Dec., ¶¶ 7, 12; Ex. G, Rosinsky Dec., ¶¶ 8, 15]. These individuals also provided evidence that other similarly situated interns were subjected to the same allegedly unlawful policies. [Ex. F, Ojeda Dec., ¶¶ 13-15; Ex. G, Rosinsky Dec., ¶¶ 16-18]. Rosinsky's personal knowledge of Viacom's HR Department provides further insight into the uniform company-wide practices and procedures. [Ex. G, Rosinsky Dec., ¶ 3]. After interning in the HR Department, Rosinsky attested that Viacom's New York HR Department oversees the hiring, firing, compensation and other employment policies for all Viacom offices nationwide. [Ex. G, Rosinsky Dec., ¶ 9]. Rosinsky further confirmed that Viacom uses one centralized College Relations Department to handle all employment policies for interns nationwide. [Ex. G, Rosinsky Dec., ¶ 10].

Defendants implemented common policies at all locations that would affect all former and current interns, justifying court-supervised notice of this action to all members of the putative collective. Although there may be "disparate factual and employment settings" the interns were all "victims of a common policy to replace paid workers with unpaid interns." Glatt v. Fox Searchlight Pictures, Inc., No. 11 Civ. 6784 (WHP), 2013 U.S. Dist. LEXIS 82079, *55

(S.D.N.Y. June 11, 2013).  As such, Plaintiffs easily meet their burden to show that they and members of the putative collective "together were victims of a common policy or plan that violated the law." Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997).

## ARGUMENT

Plaintiffs seek an order pursuant to 29 U.S.C. § 216(b), authorizing Plaintiffs to send a Notice of Pendency of Collective Action ("Notice") and a Consent to Join ("Consent") form to all prospective members of the collective who did not receive minimum wages for all hours worked allegedly owed to them by Defendants.  [Plaintiffs' proposed Notice, Consent form, and Publication Order are annexed to the Ambinder Dec. as Exhibits H, I and J, respectively.]

The FLSA, 29 U.S.C. § 216(b), provides in pertinent part that:

> [a]n action…may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

This provision of the FLSA has been interpreted to establish an "opt-in" scheme in which plaintiffs must affirmatively notify the court of their intentions to be a party to the suit.  *See* Lynch v. United Servs. Auto. Ass'n, 491 F. Supp. 2d 357, 367-69 (S.D.N.Y. 2007).  The purpose of this provision allows for an early and orderly prosecution of this action by advising all potential collective action members of its pendency, and the basic nature of the claims. Furthermore, it insures against inconsistent results through competing lawsuits by other aggrieved workers who may be contemplating legal action.

In particular, early notice will help to preserve and effectuate the rights of potential plaintiffs whose claims might otherwise become time-barred during the discovery phase of the

case. This reasoning has repeatedly been applied in FLSA collective actions similar to the instant action.  *See e.g.*  Khamsiri v. George & Frank's Japanese Noodle Rest. Inc., 12 Civ. 265 (PAE), 2012 U.S. Dist. LEXIS 76660, *4-5 (S.D.N.Y. June 1, 2012) ("The Supreme Court has recognized that the benefits of collective action accrue to plaintiffs only if they 'receiv[e] accurate and timely notice concerning the pendency of the collective action'… [C]ourt-authorized notice is appropriate to prevent erosion of claims due to the running statute of limitations, as well as to promote judicial economy.") (*quoting* Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 170 (1989) (*citing* Lynch, 491 F. Supp. 2d at 371); Patton v. Thomson, 364 F.Supp.2d 263, 267-68 (E.D.N.Y. 2005) (holding that collective action notice should be sent early, rather than "awaiting the completion of discovery…[as] 'a means of facilitating the Act's broad remedial purpose and promoting efficient case management.'") (*quoting* Hoffmann v. Sbarro, 982 F.Supp. 249, 262 (S.D.N.Y. 1997) (*citing* Braunstein v. Eastern Photographic Lab., 600 F.2d 335, 336 (2d Cir. 1978)).  Additionally, there is no prejudice to the Defendants, as the proposed Notice and Consent form do not provide anything more than a court-approved general description of the action, a history of the proceedings, and an explanation of opt-in procedures. Patton, 364 F.Supp.2d at 267-68.

District courts have wide discretion to facilitate notice to potential members of the class under the FLSA. Hoffmann-La Roche v. Sperling, 493 U.S. 165 (U.S. 1989); Braunstein, 600 F.2d at 336. The Second Circuit has held that giving courts the power to facilitate notice "comports with the broad remedial purpose of the Act, which should be given a liberal construction, as well as with the interest of the courts in avoiding multiplicity of suits." Braunstein, 600 F.2d at 336.

**I)**    **COURT-AUTHORIZED    NOTICE   IS   LIBERALLY   GRANTED   AND PLAINTIFFS' BURDEN IS MINIMAL**

Court-authorized notice to potential class members generally occurs during the first stage

of a two-part procedure where courts determine whether the potential plaintiffs in a class action

are "similarly situated" in accordance with 29 U.S.C. § 216(b).  *See e.g.* Salomon v. Adderley

Indus., 847 F. Supp. 2d 561, 563 (S.D.N.Y. 2012) (*citing* Myers v. Hertz Corp., 624 F.3d 537,

554-55 (2nd Cir. 2010); Paguay v. Barbasso, Inc., No. 11 Civ. 6266 (LTS), 2012 U.S. Dist.

LEXIS 99252, 4-5 (S.D.N.Y. July 17, 2012) (*citing* Morales v. Plantworks, Inc., No. 05 Civ.

2349(DC), 2006 U.S. Dist. LEXIS 4267 at *1 (S.D.N.Y. Feb. 2, 2006).

The  first  stage,  also  referred  to  as  the  notice  stage,  takes  place  prior  to  discovery,

requiring the court to make its determination on whether to certify the collective based on the

limited evidence then available. *See* Pendlebury v. Starbucks Coffee Co., 2005 U.S. Dist. LEXIS

574 at *3 (S.D. Fla. Jan. 3, 2005); Epps v. Oak St. Mortg. LLC, 2006 U.S. Dist. LEXIS 31896

(M.D. Fla. May 22, 2006). The Court in Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D.

363 (S.D.N.Y.2007) explained:

> At the first stage, the court will look at the pleadings and affidavits.
> If the plaintiff satisfies "the minimal burden of showing that the
> similarly situated requirement is met," the court certifies the class
> as a collective action. *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381,
> 387 (W.D.N.Y. 2005). At this juncture – also termed the "notice
> stage" – the court applies "a fairly lenient standard" and (when it
> does so) typically grants "conditional certification." *Torres v.
> Gristede's Operating Corp.*, 2006 U.S. Dist. LEXIS 74039 at *7
> (S.D.N.Y. Sept. 28, 2006) (quoting *Moss v. Crawford & Co.*, 201
> F.R.D. 398, 409 (W.D.Pa. 2000)). Potential class members are then
> notified and provided with an opportunity to opt in to the action.
> *Scholtisek*, 229 F.R.D. at 387.

Id. at 367.

To show that they are "similarly situated" Plaintiffs "need only make a 'modest factual

9

showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" Salomon v. Adderley Indus., 847 F. Supp. 2d at 563-564 (quoting Myers, 624 F.3d at 555). Plaintiffs can satisfy their burden by showing that "'there are other employees . . . who are similarly situated with respect to their job requirements and with regard to their pay provisions.'" Id. (quoting Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1258-62 (11th Cir.2008)). "Courts regularly rely on plaintiffs' affidavits and hearsay statements in determining the propriety of sending notice." Id. (citing Moore v. Eagle Sanitation, Inc., 276 F.R.D. 54, 59 (E.D.N.Y. 2011)); see also Hallissey v. Am. Online, Inc., 2008 U.S. Dist. LEXIS 18387 at *1 (S.D.N.Y. Feb. 19, 2008) ("Plaintiffs may satisfy this requirement by relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members.").

This is a more liberal and lenient standard than the required showing under Rule 23 because "Plaintiffs need not show numerosity, typicality, commonality, and adequate representation for collective action certification." Lopez v. 953 Assocs. LLC, 280 F.R.D. 113, 121 (S.D.N.Y. 2011); see also Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005); Masson v. Ecolab, Inc., No. 04 Civ. 4488 (MBM), 2005 U.S. Dist. LEXIS 18022 (S.D.N.Y. Aug. 17, 2005) (collective action certification "is less stringent than the ultimate determination that the class is properly constituted.") (quoting Jackson v. New York Tel. Co., 163 F.R.D. 429, 431 (S.D.N.Y. 1995)).

## II)  PLAINTIFFS AMPLY MEET THE MINIMAL BURDEN FOR COURT-AUTHORIZED NOTICE

### A) Plaintiffs and Members of the Putative Collective Were All Similarly Subjected to Defendants' Common Policy and Plan to Misclassify Them as Unpaid Interns

Plaintiffs more than meet their minimal burden at this initial stage to show common allegations that they and the other intern-employees were similarly deprived of earned, yet unpaid wages resulting from unlawful misclassification. Plaintiffs have demonstrated that Defendants' internship program was coordinated and administered from a centralized location, where recruitment and hiring practices and procedures were implemented.

Notably, in two similar cases involving unpaid interns, the court granted the plaintiffs' motions for court-authorized notice pursuant to the FLSA. *See* Wang v. Hearst Corporation, 2012 U.S. Dist. LEXIS 97043, *6 (S.D.N.Y. July 12, 2012) (court held that Wang had satisfied her burden by "providing allegations and affidavits to the effect that Hearst made a uniform determination that interns were not employees…"); Glatt, 2013 U.S. Dist. LEXIS 82079, *55 (court-supervised notice granted to collective of interns employed at various different affiliates of Fox Entertainment Group).  In both cases the court upheld the decision to authorize notification to the putative collective, even though the defendants moved for reconsideration. *See* Wang, 2012 U.S. Dist. LEXIS 120885, *4-6 (S.D.N.Y. Aug. 24, 2012); Glatt, 2013 U.S. Dist. LEXIS 121964, *4-6 (S.D.N.Y. Aug. 26, 2013).

Likewise, in the instant matter, Plaintiffs' application for court-authorized notice should be granted. Just like the Plaintiffs in Wang and Glatt, Plaintiffs here have pled common allegations that Defendants unlawfully misclassified them and other similarly situated interns as exempt from minimum wages.

While Defendants will undoubtedly argue that notice should be denied because the Plaintiffs and members of the putative collective were engaged in a legitimate internship program, and are thus exempt from minimum wage requirements, the law is clear that such merit-based challenges are inappropriate at this initial, pre-discovery stage. *See e.g.* Diaz, 2012 U.S. Dist. LEXIS 5683, *10-11 (collecting cases) ("When evaluating whether court-authorized notice is appropriate, 'the court does not resolve factual disputes, decide ultimate issues on the merits, or make credibility determinations'" (quoting Davis, 2008 U.S. Dist. LEXIS 86577, at *27-28 (other citations omitted)); Wang, 2012 U.S. Dist. LEXIS 97043, *5 (S.D.N.Y. July 12, 2012) ("At this point, the court should not weigh the merits of the underlying claims."); Sexton v. Franklin First Financial, LTD, 2009 Dist. LEXIS 50526, at *21 (E.D.N.Y. June 16, 2009) (On a motion for conditional certification, "defendants' submissions of time records…cannot…be accepted by the Court at this stage."); Mendoza v. Casa De Cambrio Delgado, Inc., 2008 U.S. Dist. LEXIS 61557 (S.D.N.Y. Aug. 12, 2008) ("It is not necessary for a court to evaluate the merits of the plaintiffs' claims in order to determine that a group of similarly situated persons exists."); Fasanelli v. Heartland Brewery, Inc., 516 F.Supp.2d 317, 322 (S.D.N.Y. 2007) (on a motion for conditional certification the court is not being asked for a determination on the merits); Realite v. Ark Restaurants Corp., 7 F.Supp.2d 303, 307 (S.D.N.Y. 1998) (holding that "… factual disputes do not negate the appropriateness of court facilitated notice."). Further, Defendants' internship defense would be commonly applied to all members of the putative collective. These issues are common to all members of the putative collective, warranting publication of court-authorized notice.

**B) Plaintiffs' Declarations and Pleadings State That They And Their Co-Workers Were Not Paid Minimum Wages As Required By The FLSA**

As further evidence that Plaintiffs have met the minimal standard required to certify the collective action and publish a court-authorized notice, Plaintiffs have provided sworn statements regarding the substantial work they performed on behalf of Defendants. [*See* Ex. F, Ojeda Dec., ¶¶ 3-7; Ex. G, Rosinsky Dec., ¶¶ 3-7].  Plaintiffs have provided sworn testimony that Defendants failed to pay them any wages for the many hours they worked.  [Ex. F, Ojeda Dec., ¶¶ 4-5; Ex. G, Rosinsky Dec., ¶¶ 4-5].  Plaintiffs have identified Defendants' allegedly unlawful policy and practice of misclassifying them as unpaid interns, and asserted they were not engaged in a legitimate internship program with adequate training and educational seminars. [Ex. F, Ojeda Dec., ¶¶ 8-15; Ex. G, Rosinsky Dec., ¶¶ 8, 11-18].  These individuals also provided evidence that other interns were subjected to the same unlawful practices committed by Defendants. [Ex. F, Ojeda Dec., ¶¶ 13-15; Ex. G, Rosinsky Dec., ¶¶ 16-18].  Plaintiffs further provided evidence that Defendants' allegedly unlawful policies and practices were uniformly enforced company-wide. [Ex. G, Rosinsky Dec., ¶¶ 9-10; *see also*, Ex. A, B, C, D, E].

It is clear that Plaintiffs have sufficiently established "a colorable basis" for their claim that Defendants engaged in a policy and practice of failing to pay Plaintiffs wages for all hours worked.  *See e.g.* Paguay, 2012 U.S. Dist. LEXIS 99252 at *5-6 (*citing* Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 263 (S.D.N.Y. 1997)). Plaintiffs "have easily made the modest showing that is required of them at this preliminary stage: they were subjected to certain wage and hour practices at the defendants' workplace and, to the best of their knowledge and on the basis of their observations, their experience was shared by members of the proposed class." Iglesias-Mendoza, 239 F.R.D. at 368.

13

## CONCLUSION

**WHEREFORE**, Plaintiffs respectfully request this Court grant Plaintiffs' motion to authorize that a court-approved notice be sent to members of the putative class to apprise them of this action, along with such further relief as this Court deems necessary.

Dated:  January 17, 2014
       New York, New York

                       VIRGINIA & AMBINDER, LLP

                       /s/ Lloyd R. Ambinder, Esq.
                       LaDonna M. Lusher, Esq.
                       Suzanne B. Leeds, Esq.
                       Trinity Centre
                       111 Broadway, Suite 1403
                       New York, New York 10006
                       Tel:   (212) 943-9080
                       lambinder@vandallp.com

                       LEEDS BROWN LAW, P.C.
                       Jeffrey K. Brown, Esq.
                       Michael A. Tompkins, Esq.
                       Daniel Markowitz, Esq.
                       One Old Country Road, Suite 347
                       Carle Place, NY 11514
                       Tel:   (516) 873-9550
                       jbrown@leedsbrownlaw.com

                       *Attorneys for Plaintiffs and the Putative Class*

To:   VEDDER PRICE P.C.
        Laura Sack, Esq.
        Lyle Zuckerman, Esq.
        1633 Broadway, 47th Floor
        New York, New York 10019
        Tel: (212) 407-6960
        Fax: (212) 407-7799

        *Attorneys for Defendants*

14