UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CASEY O'JEDA, individually and on behalf
of other persons similarly situated who were
employed by VIACOM INC., MTV
NETWORKS MUSIC PRODUCTION INC.,
MTV NETWORKS ENTERPRISES INC.
and/or any other entities affiliated with
or controlled by VIACOM INC., MTV
NETWORKS MUSIC PRODUCTION INC.,
and/or MTV NETWORKS ENTERPRISES
INC.,

               Plaintiff,           Case No. 13 Civ. 5658 (JMF)

         -against-

VIACOM INC., MTV NETWORKS MUSIC
PRODUCTION INC., MTV NETWORKS
ENTERPRISES INC., and/or any other entities
affiliated with or controlled by VIACOM
INC., MTV NETWORKS MUSIC
PRODUCTION INC., and/or MTV
NETWORKS ENTERPRISES INC.,

               Defendants.

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR COURT AUTHORIZED NOTICE TO THE PURPORTED COLLECTIVE PURSUANT TO 29 U.S.C. § 216(b)

**VEDDER PRICE P.C.**
Lyle S. Zuckerman
Michael Goettig
1633 Broadway, 47th Floor
New York, New York 10019
(212) 407-7700
*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

FACTS RELEVANT TO § 216(b) ANALYSIS ...................................................................... 1

    A.    Defendants, Plaintiff, and the Sole Opt-In Plaintiff................................................. 1

    B.    Facts Alleged – and Omitted – by Plaintiff ........................................................... 3

    C.    Facts Outside Plaintiff's Personal Knowledge ...................................................... 5

        1.    Viacom Offices and Subsidiaries Maintain a Multitude of
            Geographically Dispersed and Substantively Distinct Internship
            Programs .................................................................................................... 5

        2.    Internships Varied Widely by Brand, Department, and Interns'
            Interests .................................................................................................... 7

ARGUMENT ........................................................................................................................... 9

    A.    The Court Should Not Authorize Notice ................................................................. 9

        1.    Legal Standard .......................................................................................... 9

        2.    Plaintiff has not Submitted Evidence of an Unlawful Nationwide
            Written Policy or Unlawful Nationwide Unwritten Practice .................. 10

            (a)    Allegations of a common (mis)classification are not
                 sufficient ..................................................................................... 10

            (b)    Plaintiff submits no probative evidence concerning interns
                 outside of New York City ........................................................... 11

            (c)    Plaintiff submits no evidence that he is similarly situated to
                 interns nationwide, or even within New York City's
                 various divisions and departments, throughout the relevant
                 period ......................................................................................... 15

            (d)    Plaintiff's reliance upon *Wang* and *Glatt* is misplaced............... 19

    B.    Plaintiff's Proposed Notice and Opt-In Procedure is Defective .......................... 20

CONCLUSION ........................................................................................................................ 23

i

**TABLE OF AUTHORITIES**

**Page**

### Cases

*Ahmed v. T.J. Maxx Corp.*,
    No. CV 10-3609, 2013 WL 2649544 (E.D.N.Y. June 8, 2013) ............................................... 12

*Bernard v. Household Int'l, Inc.*,
    231 F. Supp. 2d 433 (E.D. Va. 2002) .................................................................................... 10

*Berndt v. Cleary Bldg. Corp.*,
    No. 11 Civ. 791, 2013 WL 3287599 (W.D. Wis. Jan. 24, 2013) ........................................... 14

*Bramble v. Wal-Mart Stores, Inc.*,
    No. 09-CV-4932, 2011 WL 1389510 (E.D. Pa. Apr. 12, 2011)........................................ 11, 12

*Chemi v. Champion Mort.*,
    No. 05 cv 01238, 2006 WL 454363 (D.N.J. June 19, 2006) .................................................. 18

*Chowdury v. Duane Reade*,
    No. 06 Civ. 2295, 2007 WL 2873929 (S.D.N.Y. Oct. 2, 2007) ............................................. 13

*Clausman v. Nortel Networks, Inc.*,
    No. 02-0400, 2003 WL 21314065 (S.D. Ind. May 1, 2003)..................................................... 9

*Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914 (D. Ariz. 2010) .................................................... 9, 11

*Diaz v. Elec. Boutique of Am., Inc.*,
    No. 04-CV-0840E, 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005)............................ 10, 13, 14

*Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317 (S.D.N.Y. 2007)............................ 22

*Fengler v. Crouse Health Found., Inc.*, 595 F. Supp. 2d 189 (N.D.N.Y. 2009) ................... 21, 22

*Glatt v. Fox Searchlight Pictures, Inc.*, 293 F.R.D. 516 (S.D.N.Y. 2013) ............................ 16, 19

*Gordon v. Kaleida Health*,
    No. 08-CV-378S, 2009 WL 3334784 (W.D.N.Y. Oct. 14, 2009) ..................................... 21, 22

*Guillen v. Marshalls of MA, Inc.* ("*Guillen I*"), 750 F. Supp. 2d 469 (S.D.N.Y. 2010) ........... 9, 15

*Guillen v. Marshalls of MA, Inc.* ("*Guillen II*"),
    No. 09 Civ 9575, 2012 WL 2588771 (S.D.N.Y. July 2, 2012) ............................................... 11

*Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340 (E.D.N.Y. 2012) ................... 21

*Guzman v. VLM, Inc.*, No. 07-CV-1126, 2007 WL 2994278 (E.D.N.Y. Oct. 11, 2007) ............. 15

*Hintergerger v. Catholic Health Sys.*,
    No. 08-cv-380S, 2009 WL 3464134 (W.D.N.Y. Oct. 21, 2009)........................................ 21, 22

*Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249 (S.D.N.Y. 1997)........................................................ 10

*Hoffman-LaRoche v. Sperling*, 493 U.S. 165 (1989)..................................................................... 9

*Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265 (M.D. Ala. 2004) ................................................ 18

*Ikikhueme v. CulinArt, Inc.*,
    No. 13 Civ. 293, 2013 WL 2395020 (S.D.N.Y. June 3, 2013).......................................... *passim*

*In re Wells Fargo Home Mort.*, 571 F.3d 953 (9th Cir. 2009) .................................................... 11

*Indergit v. Rite Aid Corp.*,
    No. 08 Civ. 11364, 2010 WL 2465488 (S.D.N.Y. June 16, 2010).......................................... 13

*Khan v. Airport Mgmt. Servs., LLC*,
    No. 10 Civ. 7735, 2011 WL 5597371 (S.D.N.Y. Nov. 16, 2011) ....................................... 9, 12

*King v. West Corp.*,
    No. 8:04 CV 318, 2006 WL 118577 (D. Neb. Jan. 13, 2006) .................................................. 11

*Knispel v. Chrysler Grp. LLC*,
    No. 11-CV-11886, 2012 WL 553722 (E.D. Mich. Feb. 21, 2012)......................................... 21

*Kronick v. bebe Stores, Inc.*,
    No. Civ. 07-4514, 2008 WL 4546368 (D.N.J. Oct. 2, 2008) ................................................. 10

*Krueger v. N.Y. Tel. Co.*,
    Nos. 93 CIV 178 & 179, 1993 WL 276058 (S.D.N.Y. July 21, 1993).................................... 10

*Levinson v. Primedia Inc.*,
    No. 02-CIV-2222, 2003 WL 22533428 (S.D.N.Y. Nov. 6, 2003) ......................................... 10

*Marsh v. Butler Cnty. Sch. Sys.*, 242 F. Supp. 2d 1086 (M.D. Ala. 2003) ................................. 11

*McElmurry v. US Bank Nat'l Ass'n*, No. 04-642 2006 WL 3908536 (D. Or. Dec. 8, 2006) ....... 18

*McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438 (S.D.N.Y. 2012)....................... 9, 10, 14

*Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010)..................................................................... 20

*Nakahata v. New York Presbyterian Healthcare Sys., Inc.*,
    Nos. 10 Civ. 2661, 2662, 2683, 3247, 2011 WL 321186 (S.D.N.Y. Jan. 28, 2011) ............... 15

*Payne v. Pauley*, 337 F.3d 767 (7th Cir. 2003)........................................................................... 14

*Richards v. Computer Scis. Corp.*,
No. 3-03 Civ. 630, 2004 WL 2211691 (D. Conn. Sept. 28, 2004) .......................................... 14

*Ritz v. Mike Rory Corp.*, No. 12 Civ. 367, 2013 WL 1799974 (E.D.N.Y. Apr. 30, 2013) .......... 22

*Silva v. Calle 8, LLC*, No. CV 2012-677, 2013 WL 6330848 (E.D.N.Y. Dec. 5, 2013) .............. 19

*Songer v. Dillon Res., Inc.*, 569 F. Supp. 2d 703 (N.D. Tex. 2008) ............................................ 14

*Trinh v. JP Morgan Chase & Co.*,
No. 07-CV-1666, 2008 WL 1860161 (S.D. Cal. Apr. 22, 2008) ................................... 9. 11, 18

*Vasquez v. Vitamin Shoppe Indus. Inc.,*
No. 10 Civ. 8820, 2011 WL 2693712 (S.D.N.Y. July 11, 2011) ............................ 9, 10, 12, 17

*Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009) ..................................... 11

*Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947) ......................................................... 15, 16

*Wang v. Hearst Corp.* (*"Wang"*), 293 F.R.D. 489 (S.D.N.Y. 2013) ....................................... 16, 20

*Wang v. Hearst Corp.* (*"Wang I"*), No. 12 CV 793, Docket # 23 (June 7, 2012). ....................... 20

*Young v. Cooper Cameron Corp.,* 229 F.R.D. 50 (S.D.N.Y. 2005) ............................................. 10

## Statutes

29 U.S.C. § 216(b) .......................................................................................................................... 1

29 U.S.C. § 255 ............................................................................................................................ 22

29 U.S.C. § 256 ............................................................................................................................ 22

Fed. R. Evid. 602 ......................................................................................................................... 14

## Other Authorities

U.S. Dep't of Labor Field Op. Handbook ¶10b11(b) ................................................................. 16

Op. Ltr., 1975 WL 40999 (Oct. 7, 1975) .................................................................................... 16

## PRELIMINARY STATEMENT

Plaintiff Casey Ojeda ("Plaintiff"), a former intern in one division of one subsidiary of Viacom Inc. ("Viacom") during a ten-week period, seeks to represent all Viacom interns at its various offices in its numerous divisions nationwide from 2010 to the present in a claim for minimum wages under the Fair Labor Standards Act (the "FLSA"). Plaintiff's motion requests authorization to issue notice of this action to all other former Viacom interns since August 13, 2007[1] under § 216(b) of the FLSA. Because Plaintiff fails to meet his burden to demonstrate that he is similarly situated to this large and diverse group of interns, the motion must be denied.

Plaintiff does not demonstrate that notice is appropriate on a nationwide or even localized basis. Plaintiff fails to identify either an unlawful written policy or an unlawful practice applicable to interns nationwide, citywide, or even office-wide. Plaintiff's internship brought him to only one of Viacom's three New York City offices, and thus he fails to allege the basis upon which he can assert with personal knowledge or other proper evidence that he is similarly situated to interns in separate physical locations across the nation or even New York City. Plaintiff fails even to demonstrate that department-wide notice is appropriate, as the Court may not infer from his brief three-month experience that he is similarly situated to interns who preceded and followed him in the mobile media group of one of Viacom's subsidiaries.

## FACTS RELEVANT TO § 216(b) ANALYSIS

### A.   DEFENDANTS, PLAINTIFF, AND THE SOLE OPT-IN PLAINTIFF

Viacom is a global media company. (WS Dec. ¶ 2).[2] Its subsidiaries develop and distribute television programming, motion pictures, radio programming, digital media, and other

---

[1] Although the maximum limitations period under the FLSA is three years, Plaintiff requests that the Court send notice to students who interned six years prior to the filing of the Complaint.

[2] The following declarations are attached to the Declaration of Lyle S. Zuckerman, Esq. as Exhibits A-H: Nathalie Arias ("NA Dec."), Jeanne McGuire ("JM Dec."), Ashley Morley ("AM Dec."), Lisa Pagan-Lopez ("LPL Dec."),

creative entertainment content.  (*Id.* ¶ 3).  Viacom has more than 400 subsidiaries, each with its own separate and independent legal status (*e.g.*, Black Entertainment Television LLC, Viacom International Inc. ("Viacom International")), and many of which have multiple divisions (*e.g.*, Viacom Media Networks, f/k/a MTV Networks) and brands (*e.g.*, MTV, Comedy Central, Nickelodeon).  (*Id.* ¶ 4).  These various units employ personnel in a multitude of departments, including production, animation, marketing, creative services, digital, advertising sales, information technology, human resources, and finance.  Some – but not all – of these units have hosted interns from 2010 to the present.  (SR Dec. ¶ 6).

Defendant MTV Networks Enterprises Inc. ("MNE") leases real property for Viacom-related businesses, and defendant MTV Networks Music Production Inc. ("MNMP") is a "production company of special programs" to be licensed to other broadcast companies.  (WS Dec. ¶¶ 6-7).  Both are indirect subsidiaries of Viacom.  (*Id.* ¶ 8).  Neither has ever hosted interns or employed employees.  (*Id.* ¶ 9; SR Dec. ¶ 7).

Plaintiff and opt-in plaintiff Nicole Rosinsky ("Rosinsky") were interns in New York City.  (Ojeda Dec. ¶ 3; Rosinsky Dec. ¶ 3).  Plaintiff was an intern during the Fall semester of 2011 within the mobile media group of Comedy Central, a brand within Viacom Media Networks ("VMN"), which is in turn a division of Viacom's subsidiary Viacom International Inc.  (Ojeda Dec. ¶ 3; SR Dec. ¶ 26).[3]  Plaintiff was the *only* intern in mobile media in New York

---

Jessica Porter ("JP Dec."), Suzanne Rosenthal ("SR Dec."), Joshua Sharpe ("JS Dec."), and Warren Solow ("WS Dec.").

[3] Illustrative of the Plaintiff's lack of personal knowledge concerning the collective he seeks to represent, Plaintiff names three corporate entities as defendants in this action (Viacom, MNE and MNMP) -- none of which hosted his internship and two of which never had interns (or employees).  In addition, Plaintiff's definition of the class he seeks to represent is ever-shifting.  Although the Complaint purports to include all interns with the named defendants and "any other entities affiliated with or controlled by" them, this description is dropped in Plaintiff's moving papers, and he seeks instead to send notice to "all current or former interns of Viacom, Inc., MTV Networks Music Production Inc., and/or MTV Networks Enterprises Inc." (excluding "administrative" and certain other employees -- whatever that is intended to mean).  (Br. at 2).  The proposed Order attached to the motion substitutes two of the named defendants with the moniker "MTV Networks." (Ambinder Dec. Exh. J).

at that time.  (SR Dec. ¶ 26).  Plaintiff was enrolled at the New York City College of

Technology, pursuing a degree in Communication Design.

Rosinsky interned during the Summer semester of 2012 in the Human Resources

Information and Analysis ("HRIA") group of Viacom's Human Resources Department.

(Rosinsky Dec. ¶ 3; LPL Dec. ¶ 6).  She was the *only* student with an internship in the HRIA

group at that time.  (LPL Dec. ¶ 8).  She was enrolled at Ohio State University pursuing a degree

in Business Administration with a specialization in HR.

### B.    FACTS ALLEGED – AND OMITTED – BY PLAINTIFF

In support of his motion for conditional certification, Plaintiff submits for the Court's

consideration various promotional and administrative documents of Viacom and/or one or more

of its corporate subsidiaries, as well as his own and Rosinsky's declarations.  Neither Plaintiff

nor Rosinsky makes any reference whatsoever to defendants MNE or MNMP in their

declarations.  Five of Plaintiff's exhibits refer to paid internships (Exhs. C, D1-4), and one of

them concerns internship opportunities scheduled to take place in the summer of 2014. (Exh. E).

According to Plaintiff, he "worked as an unpaid intern for Viacom in the Mobile

Development Department in Manhattan, New York from September 2011 through January

2012."  (Ojeda Dec. ¶ 3).  In that capacity, he was "responsible for carrying out various tasks

necessary to the operation and maintenance of Viacom's mobile website."  (*Id*. ¶ 6).  Plaintiff

further asserts that, "[i]n Viacom's New York office,[4] there were hundreds of other interns who

performed similar duties, and were similarly not paid for all their work."  (*Id*. ¶ 13).  Of these

hundreds of other interns, Plaintiff provides not a single name.  Plaintiff also does not specify

what these "similar duties" were; however, in light of the fact that he was the only intern in

mobile media in Fall 2011 (SR Dec. ¶ 26), it may be presumed that the purportedly "similar

---

[4] Viacom and certain subsidiaries operate out of three offices in New York City.  (WS Dec. ¶ 10).

duties" did not involve the "operation and maintenance of Viacom's mobile website." (Ojeda Dec. ¶ 6). Plaintiff fails to set forth the basis of his personal knowledge concerning the activities of interns at the two New York City locations other than the one at which his internship took place. And, strikingly, Plaintiff's declaration is entirely silent as to thousands of interns who participated in various programs in various locations throughout the nation. Despite that, he seeks to represent them all in this collective (and class) action.

According to her declaration, Rosinsky "worked as an unpaid intern for Viacom in the Human Resources Department ('HR') in Manhattan, New York for approximately ten weeks, from June 2012 through August 2012." (Rosinsky Dec. ¶ 3). Rosinsky's declaration is devoid of any reference to mobile website maintenance. Rather, she states that her "typical duties consisted of information analysis, data entry, creating charts and collecting data." (*Id*. ¶ 7). The declaration further asserts, without elaboration or detail, that, "[i]n Viacom's New York office,[5] there were hundreds of other interns who performed similar duties," and that Rosinsky "know[s] that Viacom treated other interns in a manner similar to [her] based on [her] observations as well as the discussions [they] had amongst [them]selves." (*Id*. ¶¶ 16, 17). Rosinsky's declaration does not provide any factual detail as to how other interns were "treated," and she does not identify by name a single other intern, much less anyone whose internship activities were similar to hers.

Concerning internships outside of New York City, Rosinsky asserts merely that "Viacom uses one centralized HR [computer] system," and that "Viacom's New York HR Department oversees the hiring, firing, compensation and other employment policies for all other Viacom offices nationwide" (Rosinsky Dec. ¶ 9), neither of which relates to interns or the internship

---

[5] See footnote 3, *supra*.

programs.  (See LPL Dec. ¶¶ 4, 7).  Rosinsky also asserts that "Viacom utilizes one centralized

College Relations department to handle all employment policies for the interns who worked at

Viacom."  (Rosinsky Dec. ¶ 10).  Rosinsky's declaration completely fails to substantiate her

allegedly personal knowledge concerning these assertions (or any Viacom activities outside the

period of her internship, from June to August 2012) because she does not, in fact, have such

personal knowledge, and thus, her allegations cannot be considered by the Court.  (Her sworn

statement concerning the College Relations department is demonstrably false, as shown below.)[6]

### C.   FACTS OUTSIDE PLAINTIFF'S PERSONAL KNOWLEDGE

1.   Viacom Offices and Subsidiaries Maintain a Multitude of Geographically
Dispersed and Substantively Distinct Internship Programs[7]

Viacom and its subsidiaries maintain three offices in New York City.  (WS Dec. ¶ 10).

Moreover, Viacom subsidiaries Viacom International, Black Entertainment Television LLC

("BET") and Paramount Pictures Corporation ("Paramount") each separately designed and

administered its own internship program.  (SR Dec. ¶ 8; JP Dec. ¶ 12).  Plaintiff fails to submit

any evidence concerning the BET and Paramount programs.[8]  The program in which Plaintiff

and Rosinsky participated was designed and administered by the New York College Relations

team ("NYCR") within the HR department of Viacom International.  (SR Dec. ¶¶ 6, 26, 28).

None of the three named defendants hosted Plaintiff as an intern.  (*Id*. ¶ 26).  Two of the three

named defendants have never hosted *any* interns, nor have they ever had employees.  (*Id*. ¶ 7;

WS Dec. ¶9).

---

[6] Rosinsky's sworn statements concerning a centralized HR Department and HR Systems are irrelevant to this motion, even if deemed true (which they are not).  (LPL Dec. ¶ 4).

[7] All facts concern the three-year period May 2010-May 2013, unless otherwise noted.

[8] Neither Paramount nor BET are named in the Complaint, and thus it is unclear whether Plaintiff purports to include their interns as part of the collective.  They should not be, and on their behalf, we respectfully reserve all rights to object to their inclusion in this action.

Plaintiff fails to submit any admissible evidence concerning internship programs administered by various Viacom International offices and subsidiaries outside of New York – for instance, in Burbank, Santa Monica, Glendale, and San Francisco, CA; Nashville, TN; and Miami, FL (the "Remote Programs").  In fact, NYCR did *not* administer these Remote Programs. (SR Dec. ¶¶ 9-10; AM Dec. ¶ 5; JP Dec. ¶ 4; JS Dec. ¶ 6; NA Dec. ¶ 5).  Rather, on-site human resources staff independently developed and administered each of them.  (*Id.*)  Those human resources staffers were not members of, and did not report to, NYCR.  (*Id.*)

For example, at Nickelodeon Animation Studios Inc. in Burbank, on-site human resources employee Ashley Morley ("Morley") had overall responsibility for the design and administration of its internship program ("Nick Animation Internship Program").  (AM Dec. ¶ 5).  Morley was not a member of, and did not report to, NYCR in New York.  (*Id.*)  Morley had no involvement in or knowledge of the internship programs in other locations.  (*Id.*)  The Nick Animation Internship Program – unlike the NYCR-run Internship Program – did not distribute to interns an "internship handbook" or anything similar, or anything resembling the 35-page "Internship Program Guide" that Rosinsky received from NYCR.[9]  (*Id.* ¶ 12).  Morley independently designed an orientation program for new Nick Animation Interns, without input from NYCR or human resources staff in other offices.  (*Id.* ¶ 10).  The orientation program did not address the subject of "piracy laws," which Rosinsky asserts dominated the NYCR Program orientation that she attended in New York.  (*Id.* ¶11; Rosinsky Dec. ¶ 12).

---

[9] To the contrary, Nick Animation interns received an approximately 9-page packet, which contained, among other things, a form for them to fill in their contact and other personal information, a "Nickelodeon Animation Studio Athletic Facilities Release" (for their use of a basketball court and ping-pong table), a "Non-Disclosure Agreement Between Nickelodeon Animation Studios Inc. and [the intern]," and a "Nickelodeon Animation Studio Electronic Communications Policy."  (AM Dec. ¶ 12).

Other Remote Program internships similarly were independently administered, without oversight or involvement by NYCR.  (*See, e.g.*, JM Dec. ¶¶ 4-5; AM Dec. ¶¶ 4, 5, 10, 12; JS Dec. ¶¶  6, 8, 10; JP Dec. ¶¶ 4, 12; NA Dec. ¶¶ 4-6; JS Dec. ¶¶ 6-7).

> 2.      Internships Varied Widely by Brand, Department, and Interns' Interests

Plaintiff fails to submit evidence about the experiences of any interns other than himself and Rosinsky, both of whom were interns in New York in two subgroups of larger departments, and within different corporate entities.  (*See* pp. 2-3, *supra*).  The experiences of interns nationwide varied widely depending upon the Viacom subsidiary, division, brand, and functional department in which they interned.  Some examples follow.

In the Nick Animation Internship Program (in Burbank), interns could attend a multitude of educational seminars taught in a classroom setting, including "Storyboarding 101," "Character Design," "How to Pitch a Show," "Portfolio/Reel Critique," "Post Production," and "How to Budget an Animated Show."  (AM Dec. ¶ 15 (d)(ii)).  These seminars taught critical and valuable skills to interns aspiring to careers in animation and television production.  (Employees were not invited to these classes. (*Id*.))  Attendance was voluntary, so the interns who demonstrated the initiative to attend very likely had a different internship experience than those who had less drive.  (*Id*.)  These seminars were not offered in any other location, and interns from other locations were not invited to participate.  (*Id*. ¶ 15(d)).  In stark contrast, Plaintiff and Rosinsky claim that they were *not* offered "*any* … educational seminars."  (Ojeda Dec. ¶ 11; Rosinsky Dec. ¶ 11).

For another example, various VMN brands and/or departments in New York City offered interns training opportunities in the form of a "special project."  (SR Dec. ¶ 23).  The end product was reviewed by employees and critical feedback was provided to the interns.  (*Id*.).  For example, interns in the Spike TV department of VMN's Entertainment Group developed a mock

awards show.  (*Id.* ¶ 23(a)(ii)).  They created budgets, researched an appropriate venue, identified "talent" to host the show, developed show themes, and so forth.  (*Id.*)  Employees reviewed interns' efforts and provided feedback.  (*Id.*)  No such awards show was ever produced.[10]  (*Id.*)  The purpose was purely educational.  Some departments did not offer a "special project" opportunity, some did so routinely, and some did so periodically (*i.e.*, some semesters but not all semesters).  (*Id.* ¶ 23(a)).  The CMT Radio Network department in the CMT Internship Program in Nashville permitted its interns to conduct mock radio interviews in the radio studio, using the same equipment as its full-time radio disc jockeys.  (JS Dec. ¶ 14 (a)).  The CMT HR Department had no "special project" opportunities.  (*Id.* ¶ 14(c)).  Plaintiff and Rosinsky contend that they were *not* offered "*any* formal training sessions."  (Ojeda Dec. ¶ 8; Rosinsky Dec. ¶ 11).

Additional learning experiences varied by program and department.  (JP Dec. ¶ 11-12; JS Dec. ¶ 17; AM Dec. ¶ 15(c) & (g); SR Dec. ¶ 24(a) & (c); LPL Dec. ¶ 10).  The tasks in which interns engaged (if any) also varied widely.  As set forth above, Plaintiff and Rosinsky allegedly engaged in tasks that were entirely different, and both of them claim they were unsupervised.  (Ojeda Dec. ¶¶ 3, 6, 10; Rosinsky Dec. ¶¶ 3, 7).  Plaintiff and Rosinsky fail to provide any evidence of what tasks other interns engaged in (if any), and under what circumstances.  In contrast to them, for example, the NYCR itself hosted interns.  Among other things, NYCR interns were trained on conducting interviews.  (SR Dec. ¶ 21).  To put that training to practice, NYCR interns conducted actual initial interviews of prospective intern candidates while a NYCR supervisor closely supervised them and coached them as appropriate.  (*Id.*)

---

[10] Other New York special projects included the creation of a mock on-air promo for Nickelodeon (which was not used by the Company and was solely for the benefit of the interns), and the conceptual design of a company-themed graphic (for intern sweatshirts).

Numerous other components of the various programs nationwide were different, dependent upon location, division, and brand, including (i) the social/recreational activities offered to interns, (ii) the end-of-program resume writing / portfolio-building / interview skills workshops (if any), and (iii) even whether the interns received compensation or not.[11]  (SR Dec. ¶¶ 14, 24; JS Dec. ¶¶ 16-18; AM Dec. ¶¶ 15(e), 15(f)).

## ARGUMENT

### A.   THE COURT SHOULD NOT AUTHORIZE NOTICE

#### 1.   Legal Standard

The Court has discretion to decide whether judicial efficiency will be served by permitting notice to the putative collective, and may exercise such discretion only if the plaintiff satisfies his burden of establishing that he is similarly situated to the putative collective members he seeks to represent.  *Hoffman-LaRoche v. Sperling*, 493 U.S. 165, 170 (1989).

While Plaintiff's burden at the conditional certification stage is modest, "it is not non-existent" and certification "is not automatic."  *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 443 (S.D.N.Y. 2012); *Khan v. Airport Mgmt. Servs., LLC,* No. 10-CV-7735, 2011 WL 5597371, at *5 (S.D.N.Y. Nov. 16, 2011); *Vasquez v. Vitamin Shoppe Indus. Inc.,* No. 10 Civ. 8820, 2011 WL 2693712, at *3 (S.D.N.Y. July 11, 2011); *Guillen v. Marshalls of MA, Inc.* ("*Guillen I*"), 750 F. Supp. 2d 469, 480 (S.D.N.Y. 2010) ("the burden is not non-existent and the factual showing, even if modest, must still be based on some substance"); *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 925 (D. Ariz. 2010); *see also Trinh v. JP Morgan Chase & Co.*, No. 07-CV-1666, 2008 WL 1860161, at **3-4 (S.D. Cal. Apr. 22, 2008); *Clausman v. Nortel Networks, Inc.*, No. 02-0400, 2003 WL 21314065, at *4 (S.D. Ind. May 1, 2003).

---

[11]  Viacom International ran two programs that provided interns a weekly stipend, the POSSE Foundation Internship Program and the T-Howard Foundation Internship Program.

Specifically, Plaintiff's burden is to set forth evidence "sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that *violated the law*." *Diaz v. Elec. Boutique of Am., Inc.*, No. 04-CV-0840E, 2005 WL 2654270, at *3 (W.D.N.Y. Oct. 17, 2005) (emphasis added) (quoting *Hoffman v. Sbarro, Inc.,* 982 F. Supp. 249, 261 (S.D.N.Y. 1997)); *Vasquez*, 2011 WL 2693712, at *3; *Levinson v. Primedia Inc.*, No. 02-CIV-2222, 2003 WL 22533428, at *1 (S.D.N.Y. Nov. 6, 2003). To do so, Plaintiff cannot merely point to similarities that are *unrelated* to the underlying inquiry whether he (and the collective) was properly classified as trainees rather than employees. Rather, he must identify facts which demonstrate that he and the collective are "similarly situated … with respect to their allegations that the law has been violated." *Young v. Cooper Cameron Corp.,* 229 F.R.D. 50, 54 (S.D.N.Y. 2005) (citing *Krueger v. N.Y. Tel. Co.*, Nos. 93 CIV 178 & 179, 1993 WL 276058, at *2 (S.D.N.Y. July 21, 1993)) (emphasis added).

Moreover, Plaintiff must proffer *competent* evidence to meet this burden. *Kronick v. bebe Stores, Inc.*, No. Civ. 07-4514, 2008 WL 4546368, at *2 (D.N.J. Oct. 2, 2008); *Bernard v. Household Int'l, Inc.*, 231 F. Supp. 2d 433, 435 (E.D. Va. 2002). Conclusory or generalized statements, speculation, and sworn statements submitted "on information and belief" do not suffice. *McGlone*, 867 F. Supp. 2d at 443 ("the modest factual showing cannot be satisfied simply by unsupported assertions"); *Ikikhueme v. CulinArt, Inc.*, No. 13 Civ. 293, 2013 WL 2395020, at *2 (S.D.N.Y. June 3, 2013).

        2.      Plaintiff has not Submitted Evidence of an Unlawful Nationwide Written Policy or Unlawful Nationwide Unwritten Practice

        *(a)     Allegations of a common (mis)classification are not sufficient*

The mere allegation that Defendants misclassified Plaintiff and thousands of other interns as trainees under the FLSA does not justify Court-authorized notice, because it "is not by itself

sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members as 'similarly situated' for § 216(b) purposes." *Vasquez,* 2011 WL 2693712, at *4 (citing *Bramble v. Wal-Mart Stores, Inc.,* No. 09-CV-4932, 2011 WL 1389510, at *4 (E.D. Pa. Apr. 12, 2011)); s*ee also Guillen v. Marshalls of MA, Inc.* ("*Guillen II*"), No. 09 Civ 9575 (LAP) (GWG), 2012 WL 2588771, at *1 (S.D.N.Y. July 2, 2012) (collecting cases in support of the rule that "the mere fact of a common FLSA-exempt designation, job description, or uniform training is insufficient to find [a putative class] 'similarly situated' for FLSA purposes"); *Colson*, 687 F. Supp. 2d at 927 (denying FLSA conditional certification and holding that the "mere classification of a group of employees as exempt does not automatically dictate … whether collective action notification is appropriate") (citing *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009)); *In re Wells Fargo Home Mort.*, 571 F.3d 953, 959 (9th Cir. 2009); *Trinh*, 2008 WL 1860161, at **3-5 (denying FLSA conditional certification where plaintiffs' only allegation was that defendants uniformly classified plaintiffs and other loan officers as exempt); *King v. West Corp.*, No. 8:04 CV 318, 2006 WL 118577, at *13 (D. Neb. Jan. 13, 2006) ("[m]erely showing that an employer classified a group of employees as exempt is not sufficient to establish that [those] employees are similarly situated for the purposes of an FLSA collective action"); *Marsh v. Butler Cnty. Sch. Sys.*, 242 F. Supp. 2d 1086, 1094 (M.D. Ala. 2003) ("the mere fact that violations [of the FLSA] occurred cannot be enough to establish similarity").

       (b)     *Plaintiff submits no probative evidence*
                *concerning interns outside of New York City*

      Plaintiff submits no evidence of a nationwide policy or practice; indeed, neither he nor Rosinsky includes any specific reference to the Remote Programs or any office location outside of New York City, any intern who participated in a Remote Program or interned outside of New

York City, or any intern who participated in any program before or after their own brief internships.  Courts routinely deny motions to conditionally certify nationwide collective actions where, as here, the plaintiff submits evidence from only a few employer sites and during a limited time period, since such submissions fail to offer any personal knowledge that persons at other sites or at other times engaged in similar job duties.  *Ikikhueme*, 2013 WL 2395020, at **2-3 (denying conditional certification of sous chefs nationwide where plaintiff failed to provide any evidence about the duties of sous chefs in locations other than plaintiff's and during time periods before and after plaintiff was employed); *Khan v. Airport Mgmt. Servs., LLC*, No. 10 Civ. 7735, 2011 WL 5597371 at **4-5 (S.D.N.Y. Nov. 16, 2011) (denying conditional certification where store manager failed to establish that other store managers at defendants' 600 stores were given duties that were inconsistent with company policy and their exempt status); *Ahmed v. T.J. Maxx Corp.*, No. CV 10-3609, 2013 WL 2649544, at *13 (E.D.N.Y. June 8, 2013) (reversing Magistrate Judge, and denying conditional certification of nationwide class of managers precisely because the plaintiffs' evidence concerning the performance of non-exempt work was from an "extremely limited" geographical region (New York and Connecticut)); *Vasquez*, 2011 WL 2693712, at *3 (denying conditional certification of store managers nationwide because "a geographically concentrated cluster of [store managers] whom [plaintiff] claims were assigned duties inconsistent with their exempt classification … is too thin a reed on which to rest a nationwide certification."); *Bramble*, 2011 WL 1389510, at *8 (declining to conditionally certify nationwide class where there was "sparse evidence … to support plaintiff's contention that all [persons in his job title nationwide] similarly performed non-exempt tasks").

   Plaintiff seems to contend that the Internship Guide that he received governed internships nationwide (Br. at 3), but he submits no evidence whatsoever to establish this (or even that it is

distributed to all interns in New York City).  Plaintiff proffers no declarations from any student

who interned in Remote Programs, and neither Plaintiff nor Rosinsky addresses this point in their

declarations.  Rather, Plaintiff speculates in his brief that the Program Guide must apply to

internships nationwide merely because it contains descriptions of the various national cable

channels and brands within VMN (which descriptions are similar to those listed in Viacom's

annual reports and other publicly-available documents) and lists contact information for

departments nationwide. (Br. at 3.)  Plaintiff's wholesale speculation, asserted solely in a

memorandum of law, cannot substitute for sworn testimony on personal knowledge.  (See fn 12,

*infra*.)

Plaintiff submits no proof that the Internship Guide applies to all interns, because it does

not.  However, even if he could prove that the Guide applied to all interns, he would fail to meet

his burden since the Guide provides no evidence "sufficient to demonstrate that [he] and

potential plaintiffs together were victims of a common policy or plan that *violated the law*."

*Diaz*, 2005 WL 2654270, at *3 (emphasis added).  Rather, Plaintiff relies on the Internship

Guide's one "internal phone directory," uniform "procedures for using the telephone … and

connecting to the Viacom network," and "department location information for various offices."

(Br. at 3.)  These innocuous facts are meaningless with respect to the claim in this case.[12]

Plaintiff may also attempt to argue that he has met his burden by alleging that "Viacom's

'College Relations' Department ... oversees the entire internship program, regardless of

department or geographic location."  (Br. at 3.)  However, he submits no admissible proof of this

---

[12] The Internship Guide also does not set forth the daily activities of  interns (or job duties, as Plaintiff would argue), and thus it is distinguishable from the cases in which courts certified FLSA actions, in part, on the basis of a common job description.  *Cf. Indergit v. Rite Aid Corp.*, No. 08 Civ. 11364, 2010 WL 2465488, at *5 (S.D.N.Y. June 16, 2010) (conditionally certifying class of store managers in classification case because plaintiff submitted proof that job descriptions and other corporate documents "indicate that store managers are officially assigned a similar set of duties"); *Chowdury v. Duane Reade*, No. 06 Civ. 2295, 2007 WL 2873929, at *4 (S.D.N.Y. Oct. 2, 2007) (conditionally certifying class of assistant store managers based on uniform job descriptions).

assertion.  Although Rosinsky's declaration claims that "Viacom also uses one centralized

College Relations Department to handle all employment policies for all interns who worked at

Viacom" (Rosinsky Dec. ¶ 10), this allegation is not admissible since she fails to demonstrate

that she has personal knowledge of internship programs in other departments, other divisions and

other cities across the country.[13]  Critically, Rosinsky does not proffer that she has "personal

knowledge" of the matter (unlike in the preceding paragraph of her declaration concerning HR

computer systems).  Absent such personal knowledge, her statement may not be considered for

purposes of conditional certification.  (See fn 12, *supra*.)

The only admissible (and irrefutable) proof on this subject is the declarations submitted

by Defendants, which uniformly assert, with proper foundation and based on personal

knowledge, that NYCR does <u>not</u> administer Remote Programs (or those administered by BET or

Paramount).  (See p. 6 *supra*.)

Moreover, even if Plaintiff did present admissible evidence of NYCR's nationwide

oversight, he fails to identify any NYCR policies or practices administered nationwide "that

*violated the law*."  *Diaz,* 2005 WL 2654270, at *3 (emphasis added).  For example, Plaintiff

alleges that "all interns are required to attend the same orientation session," all prospective

---

[13] Sworn statements submitted to support a motion for conditional certification must be based on personal knowledge.  *See, e.g., McGlone,* 867 F. Supp. 2d at 444 ("declaration that is not made on personal knowledge, but instead based on information or belief, does not set out facts that would be admissible in evidence" to satisfy the plaintiffs' burden to show nationwide collective action is appropriate); *Songer v. Dillon Res., Inc.,* 569 F. Supp. 2d 703, 707 (N.D. Tex. 2008) (where "affidavits contain nothing to establish that the plaintiffs have personal knowledge of those matters as they pertain to any other [employee] … they are not evidence of a 'widespread discriminatory plan'"); *Richards v. Computer Scis. Corp.,* No. 3-03 Civ. 630, 2004 WL 2211691, at *2-3 (D. Conn. Sept. 28, 2004) (striking portions of affidavits submitted with motion for conditional certification based on improper hearsay and lack of personal knowledge with respect to conclusory allegations).  "Conclusions about the policies in place at '*all* of [defendant's] branches' based on conversations with just *some* branch managers" should be excluded as mere speculation. *Berndt v. Cleary Bldg. Corp.,* No. 11 Civ. 791, 2013 WL 3287599, at *13-14 (W.D. Wis. Jan. 24, 2013) (emphasis added) (motion to strike portions of plaintiffs' declarations granted in part). Federal Rule of Evidence 602 also requires that "a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  Fed. R. Evid. 602.  Although "personal knowledge may include reasonable inferences, those inferences must be 'grounded in observation or other first-hand personal experience.  They must not be flights of fancy, speculations, hunches, intuitions or rumors . . . .'" *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003) (citations omitted).

interns "are directed to the same internship application," and the program length is a minimum of

10 weeks.  (Br. at 3-4).  Even if this were true, none of this is unlawful, inconsistent with trainee

status, or even implicates the legal analysis under *Walling* or the DOL six-factor "trainee" test

(see *infra*).  Indeed, by way of analogy, the mere fact that a single human resources department

administers employment policy for all company employees – from clerical up to CEO – does not

mean that all such employees are similarly situated for purposes of an FLSA collective action

challenging their exempt status.  *See, e.g.*, *Nakahata v. New York Presb. Healthcare Sys., Inc.*,

Nos. 10 Civ. 2661, 2662, 2683, 3247, 2011 WL 321186 (S.D.N.Y. Jan. 28, 2011).

> *(c)* *Plaintiff submits no evidence that he is similarly situated to*
> *interns nationwide, or even within New York City's various*
> *divisions and departments, throughout the relevant period*

Certification is inappropriate where, as here, determining liability will be extremely

individual and fact-intensive, and thus the members of the putative collective are not similarly

situated to one another for purposes of Section 216(b).[14]  In *Walling v. Portland Terminal Co.*,

330 U.S. 148 (1947), the seminal case governing the appropriate classification of persons as

"trainees," the Supreme Court held that trainees who worked unpaid for the defendant rail

company during a course of training were not employees.[15]  The Supreme Court relied on the

following facts:  (i) the trainees learned routine tasks by observation and then were gradually

---

[14] Without any evidence of a formal, facially unlawful policy on which to rely, Plaintiff may establish liability only by demonstrating that the internship activities in which he actually participated made him an employee under the FLSA pursuant to the applicable standard of law.  Thus, for Plaintiff to establish that he is similarly situated to any putative collective for purposes of initial certification of his claim, he must satisfy this Court that the internship activities in which he actually participated – and which he asserts result in his status as an "employee" under the FLSA – are sufficiently similar to those internship activities engaged in by the putative collective such that this case is suitable for resolution on a representative basis.  *Guillen I*, 750 F. Supp. 2d at 476.  Although the Second Circuit has yet to prescribe a particular method for determining whether members of a putative collective are similarly situated, district courts in this Circuit look to the "(1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for or against notification to the class."  *Guzman v. VLM, Inc.*, No. 07-CV-1126, 2007 WL 2994278, at *3 (E.D.N.Y. Oct. 11, 2007) (collecting authority) (internal quotation marks omitted).

[15] For purposes of this motion, Defendants are not challenging the underlying merits of Plaintiff's claims.  But to properly assess whether conditional certification is appropriate at this stage, the applicable standards governing the determination of one's status as either an employee or an intern must be considered.

permitted to do actual work under close scrutiny; (ii) trainees did not displace regular employees, who  supervised whatever trainees did; (iii) the work performed by trainees did not "expedite the company business" and could, and sometimes did, "impede and retard it."  *Id*. at 150.  Overall, wrote the Court, the railroad received no "immediate advantage" from the work done by the trainees, and thus, the trainees were not employees within the FLSA's meaning.  *Id*. at 153.  Based on principles drawn from *Walling*, the Department of Labor created a six-factor test[16] to determine employee/intern status.  Critically, "[w]hile the weight to be given to these factors is far from crystal clear, the Fact Sheet adds to the confusion with the introductory language: 'whether an internship or training program meets this exclusion <u>depends upon all of the facts and circumstances of each such program</u>.'"  *Wang v. Hearst Corp.* ("*Wang*"), 293 F.R.D. 489, 493 (S.D.N.Y. 2013) (citing U.S. Dep't of Labor, "Fact Sheet # 71:  Internship Programs Under The Fair Labor Standards Act," available at http://www.dol.gov/whd/regs/compliance/whdfs71.pdf ("DOL Fact Sheet #71")) (emphasis added).[17]  The totality of the circumstances analysis based on *Walling* and/or the DOL's six-factor examination will require the Court to make liability determinations that will necessarily vary based on the individual intern's internship experience.  That does not make a collective action.

With respect to DOL Factors 1-4, interns throughout the various departments within New York City engaged in varied training activities; performed myriad operational activities;

---

[16] Defendants do not concede that this is the appropriate standard, but for purposes of this motion we assume *arguendo* that the Court will, at a minimum, be guided by it.  The six factors are: (i) whether the internship, even though it includes actual operation of the facilities of the employer, is similar to training which would be given in an educational environment; (ii) whether the internship experience is for the benefit of the intern; (iii) whether the intern displaces employees or works under close supervision of staff; (iv) whether the employer that provides the training derives any immediate advantage from the activities of the intern, and whether its operations on occasion may actually be impeded; (v) whether the intern is necessarily entitled to a job at the conclusion of the internship; and (vi) whether the employer and the intern understand that the intern is not entitled to wages for the time spent in the internship.

[17] *See also* U.S. Dep't of Labor Field Op. Handbook ¶10b11(b); Op. Ltr., 1975 WL 40999 (Oct. 7, 1975); *Glatt v. Fox Searchlight Pictures, Inc.,* 293 F.R.D. 516, 531-32 (S.D.N.Y. 2013).

participated in varied educational programs and with varying degrees of frequency; and attended many different kinds of social and recreational events.  (See *supra* pp. 3-9).  Some interns received stipends or other remuneration (SR Dec. ¶ 14); those who did not clearly understood that they were not entitled to wages for the time spent in the internship (SR Dec. ¶ 13; JS Dec. ¶ 7; JP Dec. ¶ 8; AM Dec. ¶ 9), potential evidence in furtherance of DOL Factor 6.

Plaintiff's declaration highlights that highly individualized analysis would be required to dispose of this case on the merits.  After conceding that he performed sophisticated tasks (computer coding), he avers that he "was already skilled at web design and 'front end' coding before my internship."  (Ojeda Dec. ¶ 8).  This fact demonstrates the level of individual analysis required to adjudicate only Plaintiff's FLSA status, which includes evidence of his educational and other life experiences, and which differs from that of Rosinsky and every other intern.

Particularly instructive is *Vasquez*, 2011 WL 2693712, at **3-4.  In that putative collective action, the named plaintiff alleged that although he was classified by his employer as an FLSA-exempt store manager, he spent 80% of his time performing non-managerial tasks, such as stocking shelves and assisting customers in locating products.  Accordingly, he claimed that his job was misclassified as exempt from overtime wages.  In support of his motion for conditional certification, the plaintiff identified six other store managers who allegedly lacked the right to engage in traditional managerial responsibilities, and who performed non-managerial tasks such as selling products to customers, stocking shelves, cleaning the store, and working the register.  The plaintiff's motion for conditional certification was denied, because he provided only "allegations regarding the tasks performed by [six] specific individuals, based on his observations of and conversations" with them, "all of whom work at store locations in Brooklyn or Manhattan."  *Id.* at *3.  The Court held:

> [T]he only thread Plaintiff provides to link the handful of New York City [store managers] with their counterparts nationwide is their common exempt classification.  This is not sufficient, especially in a case such as this where the employees perform a hybrid of managerial and non-managerial tasks.  The FLSA regulations, which explicitly permit concurrent performance of exempt and non-exempt tasks, require that assessments of compliance with the executive exemption be done "on a case-by-case basis."  This assessment is a fact-intensive inquiry that examines the totality of the employee's duties and asks whether the employee's "primary duty" is the performance of exempt work.  Thus, while the balance of work responsibilities for [store managers] at some retail locations may possibly support a finding of misclassification, in others the balance may tip in the opposite direction.

*Id*. at *4.

The *Vasquez* decision is supported by the clear weight of authority throughout the country.  *See*, *e.g.*, *Ikikhueme*, 2013 WL 2395020, at *2; *Trinh,* 2008 WL 1860161, at **3-4 (denying conditional certification in exemption case where, as here, plaintiffs failed to provide evidence that putative class members "had essentially the same job description and training …"); *Chemi v. Champion Mort.*, No. 05 cv 01238, 2006 WL 454363 (D.N.J. June 19, 2006) (denying collective action notice, holding that "any determination of whether an employee is properly exempted under the FLSA involves a fact-intensive inquiry into each putative class member's employment circumstances"); *Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1275 (M.D. Ala. 2004) (denying conditional certification of putative collective class of store managers where defendant presented significant evidence that putative class members did not engage in similar job duties as alleged by the plaintiffs, and thus the Court "cannot conclude … that a nationwide group of [managers], or even a regional group, is similarly situated for purposes of certifying a collective action."); *McElmurry v. US Bank Nat'l Ass'n*, No. 04-642, 2006 WL 3908536, at *5 (D. Or. Dec. 8, 2006) (judicial efficiency of collective action not served where individualized inquiry into each employee's job duties is necessary).

Finally, even if Plaintiff were able to assert with the requisite degree of specificity that during the time of his internship, the other interns within Viacom's business nationwide performed duties similar to his, under similar supervisory circumstances, with similarly negligible personal benefit (which he has not), he has presented <u>no</u> evidence as to the experiences of Viacom interns in the years preceding and following his and Rosinsky's internship.[18]   Where, as here, no evidence is submitted beyond a plaintiff's testimony concerning his and the opt-in plaintiff's temporally circumscribed experiences which do not encompass the FLSA's three-year limitations period, courts routinely deny motions for 216(b) notice.  *See Ikikhueme*, 2013 WL 2395020, at *2.

> (d)   *Plaintiff's reliance upon Wang and Glatt is misplaced.*

In a final effort to avoid denial of his motion, Plaintiff contends that *Glatt* and *Wang* require conditional certification here.  Neither case, however, has any application to the instant pre-discovery motion.

The conditional certification motion in *Glatt* was submitted following significant discovery, and plaintiffs submitted affirmative evidence in support of their motion that there was "a common policy to replace paid workers with unpaid workers," including based on (i) deposition testimony from supervisors admitting that paid employees would have had to perform the tasks interns had been performing, (ii) internal documents revealing that departments requested more interns when they were busier, and (iii) an internal memo reporting that because paid internships were eliminated and overtime pay and temporary employees scaled back, "the

---

[18] Plaintiff's and Rosinsky's unfounded assertion that "Viacom treated other interns in a manner similar to" them is plainly insufficient to warrant conditional certification.  *See Silva v. Calle 8, LLC*, No. CV 2012-677, 2013 WL 6330848, at *3 (E.D.N.Y. Dec. 5, 2013) ("Plaintiff's allegation that 'others similarly situated to myself . . . were treated in a similar manner' is made upon information and belief.  In fact, not only does plaintiff fail to specifically identify the similarly situated employees, he does not describe how such employees were treated 'in a similar manner.'")

size of our [unpaid] intern program more than doubled." *See Glatt,* 293 F.R.D. at 536, 538.  No such evidence is submitted here.  To the contrary, for example, Rosinsky's internship supervisor affirms that her department hosted an intern each semester prior to Summer 2013 (when Viacom discontinued its unpaid internship programs), but has had no interns since, yet her employee headcount has not increased.[19]

In *Wang*, too, the motion for conditional certification was submitted after significant discovery, including depositions, and the plaintiffs adduced evidence that unpaid interns were substituted for paid employees.  The plaintiffs submitted, among other things, (i) "job postings" for interns which explicitly stated that interns would perform the same job duties as regular employees; (ii) e-mails which advised supervisors that unpaid interns should be substituted for paid employees to perform basic tasks, in an effort to reduce company costs and (iii) deposition transcripts in which company officials testified that interns and employees performed many of the same duties.  *See Wang v. Hearst Corp.* ("*Wang I*"), No. 12 CV 793, Docket # 23 and Exhs. A-JJ attached thereto (June 7, 2012).  Again, no such evidence exists here.

### B.   PLAINTIFF'S PROPOSED NOTICE AND OPT-IN PROCEDURE IS DEFECTIVE

In the unlikely event that the Court determines that notice is appropriate in this case, the notice Plaintiff proposes is improper in several respects.[20]

---

[19] The declarants' identical statements that Viacom would have had to require paid employees to perform the tasks that they allegedly performed, and that Viacom benefitted from the "work" that they and other interns performed, consist entirely of conclusory and wholesale speculation, unsupported by any factual foundation.  Indeed, these are "exactly the type of 'unsupported assertions' that, according to the Second Circuit, 'cannot . . . satisf[y]' a plaintiff's burden at the preliminary certification stage."  *Ikikhueme*, 2013 WL 2395020, at *2 (quoting *Myers v. Hertz Corp.,* 624 F.3d 537, 555 (2d Cir. 2010)).

[20] If the Court decides that notice is appropriate, Defendants respectfully request that the parties be ordered to meet and prepare a mutually agreeable notice and consent to join form based upon the Court's certification order.  In the event the parties cannot agree, Defendants request the opportunity to submit their own proposed notice and opt-in procedures.

First, Plaintiff's proposed notice is overly broad and must be reformed.[21]  The limited
evidence submitted by Plaintiff relates to portions of the internship program in New York, and
thus, any notice issued must be so limited.

Second, all references to "employment"/"employed"/"employ" as it relates to internship
activities must be struck.  Viacom adamantly denies that interns are employees, the Court has not
made any such determination, and thus, the public notice should not appear to give the
impression that the issue of intern vs. employee status has been resolved.

Third, Plaintiff's request to post, e-mail, and text the notice is unwarranted.  Generally,
first-class mailing is the preferred method to inform individuals of their ability to opt in to a
collective action.  Alternative forms of notification should not be used unless the plaintiff
presents facts showing that such methods are necessary.[22]  Plaintiff has made no such showing
here.  Moreover, courts recognize that notification by email and text could create risks of
distortion or misleading notification through modification by putative class members of the
notice itself, and thus, absent evidence that the notice will not reach the putative class through
mailing, e-mail should not be permitted.[23]

Fourth, Plaintiff's request for the issuance of a reminder notice should be denied.  No
showing has been or could be made that such notices are necessary, and they "could potentially
be interpreted as encouragement by the court to join the lawsuit."  *Guzelgurgenli v. Prime Time
Specials Inc.*, 883 F. Supp. 2d 340, 357 (E.D.N.Y. 2012) (quoting *Knispel v. Chrysler Grp. LLC*,
No. 11-CV-11886, 2012 WL 553722, at *8 (E.D. Mich. Feb. 21, 2012)).  Plaintiff has identified

---

[21] *See Fengler v. Crouse Health Found., Inc.*, 595 F. Supp. 2d 189, 197 (N.D.N.Y. 2009) (court retains discretion to reformulate proposed class).

[22] *See Gordon v. Kaleida Health*, No. 08-CV-378S, 2009 WL 3334784, at *11-12 (W.D.N.Y. Oct. 14, 2009); *Hintergerger v. Catholic Health Sys.*, No. 08-cv-380S, 2009 WL 3464134, at *13 (W.D.N.Y. Oct. 21, 2009).

[23] *See Gordon*, 2009 WL 3334784, at *11.

no reason why reminder notices are necessary in this case, and therefore, the request should be denied. *Id.*

Fifth, any notice period should be limited to the three-year period preceding the Court's order granting conditional certification.[24]  The statute of limitations period for the FLSA is two or three years.  29 U.S.C. § 255.

Sixth, the collective action period should be measured from the date of the Court's order granting Plaintiff's motion for conditional certification, not from the filing of the Complaint.[25]  A putative collective action member's claim is not tolled until the individual consents to join the action.  29 U.S.C. § 256; *Gordon*, 2009 WL 3334784, at *12.  The opt-in may therefore only obtain FLSA damages, at maximum, for the three-year period preceding the filing of the consent-to-join.  Sending notice to individuals who interned more than three years ago and thus have no FLSA claim does not serve the interest of the individuals or the parties.  Plaintiff also has made no showing (nor can he) that equitable tolling is appropriate.

Seventh, Plaintiff's request for personal home and cell phone numbers, e-mail addresses, and social security numbers is premature.[26]  Personal, private information – and most particularly SSNs and phone numbers – is unnecessary and should not be disclosed to Plaintiff's counsel (regardless of counsel's experience in other cases), particularly since Plaintiff has not demonstrated any need for the additional information at this stage of the case.[27]

Eighth, Defendants request that consent forms not be effective until filed with the Court and that the opt-in notice period be 45 days from the date that an agreed-upon notice is mailed.

---

[24] *See Ritz v. Mike Rory Corp.*, No. 12 Civ. 367, 2013 WL 1799974, at *3 (E.D.N.Y. Apr. 30, 2013).

[25] *See Ritz*, 2013 WL 1799974, at *3.

[26] *See Gordon*, 2009 WL 3334784, at **11-12; *Hintergerger*, 2009 U.S. Dist. LEXIS 97944, at *40-41.

[27] *See Fengler*, 595 F. Supp. 2d at 198 (in the interest of privacy, phone numbers, SSNs and e-mail addresses should not be produced for notification purposes); *Gordon*, 2009 WL 3334784, at *9 (same); *Hintergerger*, 2009 WL 3464134, at *11 (same);  *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 324 (S.D.N.Y. 2007) (defendant should not provide private information such as SSNs and telephone numbers for notification purposes).

Defendants reserve their remaining objections to Plaintiff's proposed notice and opt-in

procedure until after the Court's decision on the instant motion, if necessary.

<div align="center">

**<u>CONCLUSION</u>**

</div>

Plaintiff has not carried his burden of demonstrating that he is similarly situated to the

putative collective and a collective action should be conditionally certified.  His motion for

conditional certification should therefore be denied.

Dated: New York, New York
         January 31, 2014

<div style="margin-left: 40%;">

Respectfully submitted,
VEDDER PRICE P.C.

By: _s/Lyle S. Zuckerman_____
     Lyle S. Zuckerman
     Michael J. Goettig

1633 Broadway, 47th Floor
New York, New York 10019
(212) 407-7700 (telephone)
lzuckerman@vedderprice.com
mgoettig@vedderprice.com
*Attorneys for Defendants*

</div>