# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CASEY OJEDA and KARINA REYNAGA, individually and on behalf of other persons similarly situated, | 13-CV-5658 (JMF) |
| | **JOINT STIPULATION OF SETTLEMENT AND RELEASE** |
| Plaintiffs, | |
| against | |
| VIACOM INC., VIACOM INTERNATIONAL INC., and BLACK ENTERTAINMENT TELEVISION, LLC, | |
| Defendants. | |

This Joint Stipulation of Settlement and Release (the "Stipulation" or "Agreement") is entered into by and between Casey Ojeda ("Ojeda") and Karina Reynaga ("Reynaga") (the "Named Plaintiffs" or "Plaintiffs"), individually and on behalf of the classes of individuals that they seek to represent, and Viacom Inc., Viacom International Inc., and Black Entertainment Television, LLC (collectively "Viacom" or "Defendants").

## RECITALS

**WHEREAS**, on August 13, 2013, Ojeda filed a class and collective action lawsuit in the United States District Court for the Southern District of New York, No. 13 Civ. 5658 (JMF), on behalf of former interns at Viacom, in which Ojeda claimed that Defendants owed them wages and overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §216(b), and also asserted Rule 23 class claims against Defendants under the wage and hour laws of New York for the alleged failure to pay them wages and overtime compensation (the "Litigation"); and

**WHEREAS**, on September 11, 2014, an Amended Complaint was filed in the Litigation, adding Reynaga as a Named Plaintiff, who, on behalf of former interns at Viacom, asserted Rule 23 class claims against Defendants under the wage and hour laws of California for the alleged failure to pay them wages and overtime compensation; and

**WHEREAS**, the purpose of this Agreement is to settle fully and finally all Released Claims (as hereinafter defined) between Named Plaintiffs, the Settlement Class (defined below) and Defendants, including all claims asserted in the Litigation; and

**WHEREAS**, Defendants deny all of the material allegations in the Litigation, and deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation; and

**WHEREAS**, without admitting or conceding any liability or damages whatsoever, Defendants agree to settle the Litigation on the terms and conditions set forth in this Agreement, solely to avoid the burden and expense of continuing the Litigation; and

**WHEREAS**, Plaintiffs' Counsel evaluated the merits of the claims made against Defendants in the Litigation, which included conducting interviews with putative class and collective members, obtaining and reviewing documents relating to Defendants' policies and procedures, participating in the depositions of witnesses in New York and California, and analyzing data produced in discovery over the course of the Litigation, and concluded, based upon their analysis and evaluation of a number of factors (including but not limited to recognition of the substantial risks of litigation, the possibility that the Litigation, if not settled now, might not result in any recovery or might result in a recovery on terms less favorable than those set forth herein, the likelihood that any such recovery may not occur for several years, and the risk no class claims would be certified or a risk of future decertification of the collective that was conditionally certified), that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Named Plaintiffs and the Class Members (as defined herein).

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

1.      **DEFINITIONS.**   The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1     **Agreement.**  "Agreement" means this Joint Stipulation of Settlement and Release and all exhibits, also referred to as "Stipulation."

1.2     **Claim Form.**  "Claim Form" or "Consent to Join Claim Form and Release" means the form attached hereto as Exhibit A, that shall be attached as Form 1 to the Notice of Proposed Class and Collective Action Settlement and Fairness Hearing, which a Class Member must submit, along with an IRS 2014 W-4 and a copy of a government issued identification such as a passport or driver's license, in order to be eligible to become a Participating Claimant and recover a payment pursuant to Section 6.1.  The Claim Form shall include a release of Released State Law Claims and Released Federal Law Claims. Claim Forms provided to FLSA Collective Members who are not Current FLSA Opt-Ins shall include an opt-in statement pursuant to 29 U.S.C. Section 216.

1.3     **Claim Form Deadline.**  "Claim Form Deadline" means the date sixty (60) days after the Notice is mailed or (emailed) to the Class Members.   If the Settlement Claims Administrator re-mails the Notice to any Class Member pursuant to Section 4.2 or 4.3 of this Agreement because the first mailing was returned as undeliverable, the Claim Form

Deadline for such Class Member shall be the earlier of: (a) sixty (60) days after the re-mailing, or (b) one hundred twenty (120) days after the Preliminary Approval Order.

1.4 **Class Counsel.** "Class Counsel" or "Plaintiff's Counsel" means law firms Virginia & Ambinder, LLP and Leeds Brown Law, P.C.

1.5 **Class Members.** "Class Members" mean the FLSA Collective Members and the Rule 23 Class Members as further defined herein.

1.6 **Court.** "Court" means the United States District Court for the Southern District of New York.

1.7 **Current FLSA Opt-In.** "Current FLSA Opt-In" means any individual who timely filed a consent to join the Litigation and did not have his or her claims dismissed or withdrawn before the execution date of this Stipulation.

1.8 **Days.** "Days" means business days if the specified number is less than 10, and calendar days if the specified number is 10 or greater.

1.9 **Defendants.** "Defendants" means Viacom Inc., Viacom International Inc., and Black Entertainment Television, LLC.

1.10 **Defendants' Counsel.** "Defendants' Counsel" means the law firm Davis Wright Tremaine LLP.

1.11 **Effective Date.** The "Effective Date" means the date on which this Agreement becomes effective, which shall be fourteen (14) days following the last date the Final Approval Order entered by the Court finally approving this Agreement is appealable (30 days after the entry of Judgment), if no appeal is filed. If an appeal is taken, then the Effective Date shall be fourteen (14) days after: (i) the expiration of the time to file a petition for a writ of certiorari to review the Circuit Court's affirmance of the Final Approval Order, if no petition is filed; or (ii) if a petition for writ of certiorari is filed with respect to the Circuit Court's affirmance, the date such petition is denied, or if granted, the date of final affirmance of the Final Approval Order following review pursuant to that grant; or (iii) the date of final dismissal of any appeal from the Final Approval Order or the final dismissal of any proceeding on certiorari to review the Final Approval Order.

1.12 **Employer Payroll Taxes.** "Employer Payroll Taxes" means all taxes and withholdings an employer is required to make on its behalf arising out of or based upon the payment of wages in this Litigation, including FICA, FUTA, and SUTA obligations.

1.13 **Fairness Hearing.** "Fairness Hearing" means the hearing before the Court relating to the Motion for Final Approval.

1.14 **Final Approval Order.** "Final Approval Order" means the Order entered by the Court after the Fairness Hearing, approving the terms and conditions of this Agreement, distribution of the Settlement Checks and Service Awards, dismissing the Litigation with

3

prejudice, and entering Judgment pursuant to this Stipulation and in accordance with Fed. R. Civ. P. 58.

**1.15**   **FLSA Collective Members.**  "FLSA Collective Members" means Current FLSA Opt-Ins and individuals who were Interns for Defendants during the period January 1, 2012 through June 1, 2013.

**1.16**   **Gross Settlement Amount.**  "Gross Settlement Amount" means a potential aggregate sum not to exceed Seven Million Two Hundred and Twelve Thousand Five Hundred Dollars ($7,212,500), which Defendants have agreed to pay to settle the Litigation as set forth in this Agreement, subject, *inter alia*, to Defendants' right to terminate this Agreement as set forth herein (including if the number of Participating Claims exceeds 2,480).

**1.17**   **Intern or Interns.**  "Intern" or "Interns" means any individual whose title at Defendants as reflected in Defendants' records included the term "Intern" and who was not paid any compensation or was paid compensation at a rate less than the applicable minimum wage. Individuals whose title at Defendants was "Intern" on or after June 1, 2013 were paid the applicable minimum wage and thus are not eligible to receive Notice or be a Participating Claimant, and they are not Class Members, Rule 23 Class Members or FLSA Collective Members.

**1.18**   **Last Known Address.**  "Last Known Address" means the most recently recorded postal and email address for a Class Member as such information is contained in Defendants' intern files.

**1.19**   **Litigation.**  "Litigation," as set forth in the Introduction, means the litigation initiated by the Complaint and the Amended Complaint alleging violations of the FLSA, the wage and hours laws of New York, and the wage and hour laws of California, captioned: *Ojeda, et al. v. Viacom, Inc. et al.*, No. 13-CV-5658 (JMF).

**1.20**   **LWDA.**"LWDA" means the California Labor and Workforce Development Agency.

**1.21**   **Named Plaintiffs.**  "Named Plaintiffs" means Casey Ojeda and Karina Reynaga.

**1.22**   **Notice.**  "Notice" means the Court-approved Notice of Proposed Settlement of Class and Collective Action Lawsuit and Fairness Hearing, in the form attached as Exhibit B.

**1.23**   **Objector.**  "Objector" means an individual who timely and correctly files an objection to this Agreement, and does not include any individual who opts out of this Agreement (as opt outs are not permitted to file objections).

**1.24**   **Opt out Statement.**  "Opt out Statement" is a written signed statement that an individual Rule 23 Class Member has decided to opt out and not be included in this Agreement or the Settlement.

1.25 **Participating Claimant(s) and Participating Claim.**

(A) "Participating Claimant" or "Participating Claimants" means (i) each FLSA Collective Member who properly submits a Claim Form a copy of a government issued identification such as a passport or driver's license, and an IRS 2014 W-4 Form by the Claim Form Deadline and no more than three years following their last day as an Intern, (ii) each Current FLSA Opt-In who properly submits a Claim Form, a copy of a government issued identification such as a passport or driver's license, and an IRS 2014 W-4 Form by the Claim Form Deadline and (iii) each Rule 23 Class Member who has not opted out of the Settlement in accordance with Section 6.2 and who properly and timely submits a Claim Form and Release, a copy of a government issued identification such as a passport or driver's license, and an IRS 2014 W-4 Form by the Claim Form Deadline.

(B) "Participating Claim" is a Claim Form and Release filed (properly and timely) to recover a Settlement Check for one traditional academic semester (i.e., Spring, Summer or Fall semester) during which the Participating Claimant was an Intern with Defendants (up to the 10 weeks maximum, as set forth herein). If a Claim Form and Release is submitted to recover a Settlement Check for a second traditional university academic semester, it shall be considered a second Participating Claim and shall be separately counted toward the 2,480 claims after which Defendants shall have the right to terminate this Agreement (as set forth herein). No payment shall be due for a second traditional university academic semester unless the Participating Claimant was an Intern with Defendants over at least three (3) weeks during that second semester.

1.26 **Parties.** "Parties" shall mean Ojeda and Reynaga, individually and on behalf of the classes of individuals that they seek to represent; and Viacom Inc., Viacom International Inc., and Black Entertainment Television, LLC.

1.27 **Plaintiffs.** "Plaintiffs" shall mean Named Plaintiffs.

1.28 **Preliminary Approval Order.** "Preliminary Approval Order" means the Order entered by the Court in the form attached as Exhibit C, preliminarily approving the terms and conditions of this Agreement, and directing the manner and timing of providing Notices to the Class Members.

1.29 **Qualified Settlement Fund or QSF.** "Qualified Settlement Fund" or "QSF" means the account established by the Settlement Claims Administrator for the Settlement Amount paid by Defendants. The QSF shall be controlled by the Settlement Claims Administrator, subject to the terms of this Agreement and the Court's Orders for Preliminary Approval and Final Approval. Interest, if any, earned on the QSF shall be returned to Defendants.

1.30 **Released Federal Law Claims.** "Released Federal Law Claims" shall collectively mean any and all federal law claims, obligations, demands, actions, rights, causes of action, and liabilities against Releasees, of whatever kind and nature, character and description, whether known or unknown, and whether anticipated or unanticipated, that accrue or

5

accrued on any date up through the date of the Preliminary Approval Order, for wages, benefits and other emoluments of employment that arise from or relate in any way to the Participating Claimants' participation in Defendants' internship programs as an Intern ("Claims"), including, without limitation: (i) Claims for any type of relief under the Fair Labor Standards Act of 1938 ("FLSA"), including, without limitation, claims for wages, overtime, damages, unpaid costs, penalties (including late payment penalties), premium pay, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief, or under any other legal theory for failure to pay minimum wage, failure to pay overtime, failure to pay for all hours worked, or to recover interest, liquidated damages, and/or penalties thereon; (ii) Claims for any type of relief under the Employment Retirement Income Security Act ("ERISA"), including, without limitation, claims for vested and unvested employee benefits; (iii) Claims arising out of or related to any contract, policy, practice, or employee handbook of Defendants concerning wages and hours and employee benefits; and (iv) and any Claims related to, derivative of, or based upon the Claims in (i)-(iii) above, including for unpaid costs, penalties (including late payment penalties), liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief.

1.31    **Released State Law Claims.**  "Released State Law Claims" shall collectively mean any and all New York State, California State and local law claims, obligations, demands, actions, rights, causes of action and liabilities against Releasees, of whatever kind and nature, character and description, whether known or unknown, and whether anticipated or unanticipated, that accrued or accrue on any date up through the date of the Preliminary Approval Order, for wages, benefits and other emoluments of employment that arise from or relate in any way to the Participating Claimants' participation in Defendants' internship programs as an Intern ("Claims"), including, without limitation:  (i)  Claims for state wage and hour and wage payment claims under the New York Labor Law and the California Labor Code, and their regulations and rules, or under any other legal theory for failure to pay minimum wage, failure to pay overtime, failure to pay for all hours worked, failure to provide and/or to pay for meal and/or rest periods, failure to timely pay final wages, failure to pay "spread of hours," alleging unlawful imposition, deduction, or chargeback from compensation for expenses or costs under applicable state laws, failure to reimburse for business expenses, and/or failure to furnish accurate wage statements or other notices, and any and all claims for recovery of compensation, overtime pay, minimum wage, premium pay, interest, and/or penalties; (ii) Claims for employee benefits, including, without limitation, payments for accrued but unused vacation and paid sick leave, (iii)  Claims arising out of or related to any contract, policy, practice, or employee handbook of Defendants concerning wages and hours and employee benefits; and (iv) and any Claims related to, derivative of, or based upon the Claims in (i)-(iii) above, including for unpaid costs, penalties (including late payment penalties), liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief.

The California state law claims which are released include, without limitation:  California Labor Code §§ 96 to 98.2 et seq.; California Payment of Wages Law, and in particular, California Labor Code § 200 et seq., including, but not limited to, California Labor Code §§ 200 to 244 and §§203, 218, and 218.5; California Labor Code § 400 et seq.;  California Working Hours Law, California Labor Code § 500 et seq.; California Labor Code §§ 1171-

1206 (including, but not limited to, §§ 1182.11, 1182.12, 1193, 1194, 1194.2, 1197, 1197.1, and 1198); California Labor Code §§ 1400 to 1408; California Labor Code Private Attorneys General Act of 2004, codified at California Labor Code §§ 2698 to 2699.5, including without limitation claims asserted under this statute on behalf of the State of California; California Labor Code §§ 2800, 2802, 2804, and 2810.5; California Labor Code §§ 6310 and 6311; California Industrial Welfare Commission Wage Orders (including, but not limited to, Wage Order Nos. 11-2001 and 12-2001); California Unfair Competition Act, and in particular, California Business & Professions Code §17200 et seq., California Civil Code § 1542; and the California Constitution.

The New York state law claims which are released include, without limitation: N.Y. Lab. Law § 160 et seq.; N.Y. Lab. Law § 190 et seq. (including, but not limited to, §§ 191, 193, and 198); N.Y. Lab. Law §§ 215 and 218; New York Minimum Wage and Hour Law: NY. Lab. Law § 650 et seq.; 12 N.Y. Comp. Codes R. & Regs. Pt. 142-2.1 et seq. (including, but not limited to, §§142-2.2, 142-2.4, and 142.-2.14).

**THE RELEASED STATE LAW CLAIMS ALSO INCLUDE ALL BENEFITS AND RIGHTS OF ANY STATUTE, RULE, DOCTRINE, OR COMMON LAW PRINCIPLE OF ANY JURISDICTION WHATSOEVER THAT PROVIDES THAT A GENERAL RELEASE DOES NOT EXTEND TO UNKNOWN CLAIMS INCLUDING WITHOUT LIMITATION ANY APPLICABLE BENEFITS OR RIGHTS UNDER CALIFORNIA CIVIL CODE §1542, WHICH PROVIDES THAT A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

1.32    **Releasees.**  "Releasees" means the Defendants, and their respective present and former affiliates (provided, however, that affiliates of Viacom means only Viacom Inc. and persons directly or indirectly controlled by Viacom Inc.), divisions, subsidiaries, parents, predecessors, channels, any merged entity or merged entities and/or its or their present and former officers, partners, directors, employees, agents, attorneys, shareholders, insurers or reinsurers, employee retirement or benefit plans (and the trustees, administrators, fiduciaries, agents, representatives, insurers and reinsurers of such plans), attorneys (including, without limitation, Davis Wright Tremaine LLP, and Vedder Price PC), assigns, trustees, heirs, administrators, executors, representatives and/or principals thereof, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity that could be jointly liable with any of them.

1.33    **Rule 23 Class Members.**  "Rule 23 Class Members" are collectively individuals who were Interns for Defendants in a location in New York according to Defendants' records during the period August 13, 2007 through June 1, 2013 **("NY Class" and "NY Class Members")**; and in California according to Defendants' records during the period September 11, 2010 through June 1, 2013 **("California Class" and "California Class Members")**.

1.34 **Settlement Amount.** "Settlement Amount" means an amount sufficient to cover all Participating Claimants' Settlement Checks (subject to Defendants' right to terminate this Agreement), the Employer Payroll Taxes, the Court awarded attorneys' fees and costs, penalties pursuant to the California Private Attorney General Act of 2004 ("PAGA penalties"), the settlement administration fees and costs, and the Service Awards, which in total shall not exceed the Gross Settlement Amount.

1.35 **Settlement Checks.** "Settlement Checks" means checks issued to Participating Claimants for their share of the Settlement Amount, based on the formula set forth in Section 9.2.

1.36 **Settlement Claims Administrator.** The "Settlement Claims Administrator" shall be FRG Information Systems, an entity engaged by Class Counsel to administer the Notice of Lawsuit and Consent to Join Lawsuit forms, pursuant to the Court's Order dated May 8, 2014. The Settlement Claims Administrator shall be responsible for mailing or emailing the Notices to Class Members; responding to Class Member inquiries; assisting with the calculation of settlement allocations; reporting on the state of the Settlement to the Parties; communicating with and advising Class Members of defective or incomplete claim forms; establishing and administering the QSF; distributing settlement payments; calculating and paying the Employer Payroll Taxes; calculating and withholding Class Members' share of applicable payroll taxes (including, without limitation, federal, state, and local income tax withholding, FICA, Medicare and any state or local employment taxes); remitting such withheld funds to the appropriate taxing authorities and providing any related tax reporting; preparing and filing all tax returns necessary for the Settlement and the QSF; preparing a declaration regarding its due diligence in the claims administration process; and performing such other duties as the Parties may jointly direct or as are specified herein, including, without limitation, such duties as are specifically set forth in Section 4 hereof. All settlement administration amounts, including but not limited to the Settlement Claims Administrator's fees and costs, shall be paid from the Gross Settlement Amount in the QSF. If the Settlement is not given final approval by the Court and does not become effective, the Parties shall bear settlement administration fees and costs equally.

1.37 **Updated Address.** "Updated Address" means a mailing and/or emailing address that was updated via a standard skip trace or an updated mailing address provided by the United States Postal Service or a Class Member.

2. **NON-ADMISSION OF LIABILITY.** Nothing relating to this Agreement, or any communications, papers, or orders related to the Settlement, shall be cited to as, construed to be, admissible as, or deemed an admission by Defendants or Releasees of any liability, culpability, negligence, or wrongdoing toward the Plaintiffs, the Class Members, or any other person, and Defendants and Releasees specifically disclaim any liability, culpability, negligence, or wrongdoing toward the Plaintiff, the Class Members, or any other person, or that class or collective action certification is appropriate in this or any other matter. Each of the Parties has entered into this Stipulation with the intention to avoid further disputes and litigation with the attendant inconvenience, expenses, and contingencies. This Agreement, and any communications, papers, or orders related to the Settlement, may not be cited to, used, or admitted as evidence of liability or that class or collective action certification is appropriate. There has been no determination by any court as to the merits

8

of the claims asserted by Plaintiffs against Defendants as to whether a class should be certified or an FLSA collective finally certified, other than for settlement purposes only.

**3.      NEW YORK AND CALIFORNIA CLASSES.**

3.1      The Parties stipulate, for settlement purposes only, to the Rule 23 class certification by the Court of all California state law claims and all New York state law claims. The Parties agree that the stipulated class certifications cannot be cited in any other cases or for any other purpose or even in this Litigation in the event that final approval is not granted or the Agreement is terminated, cancelled, declared void, or fails to become effective in accordance with its terms, or if the Judgment does not become a Final Judgment.

3.2      Class Counsel shall give written notice by certified mail to the California LWDA of the allegedly violated provisions of PAGA, including the facts and theories to support the alleged violations, which written notice shall first be approved by Defendants' counsel.

**4.      RETENTION OF THE SETTLEMENT CLAIMS ADMINISTRATOR.**     The Settlement Claims Administrator shall be responsible for the services defined in Section 1.36.

4.1      The Settlement Claims Administrator shall provide weekly reports to counsel for the Parties regarding the status of the mailing/emailing of the Notices to Class Members, a summary of the number of individuals who have filed claims forms or requested to opt out or submitted objections, a summary of Class Members who submit an incomplete or defective Claim Form with a description of steps taken to notify the claimant to cure the defect;  the claims administration process, distribution of the Settlement Checks, and other matters relating to the Settlement.

4.2      In the event that, subsequent to the first mailing of the Notice of Proposed Settlement of Class and Collective Action and Fairness Hearing and prior to the Claim Form Deadline, a Notice is returned to the Settlement Claims Administrator as undeliverable with a forwarding address for the recipient, the Settlement Claims Administrator shall re-mail the Notice to that address within seven (7) days, and the new address shall be deemed the Updated Address for that Class Member.

4.3      In the event that, subsequent to the first mailing of the Notice of Proposed Settlement of Class and Collective Action and Fairness Hearing and up to five (5) days prior to the Claim Form Deadline, a Notice is returned to the Settlement Claims Administrator as undeliverable with no forwarding address, the Settlement Claims Administrator shall perform a standard skip trace in an effort to ascertain an Updated Address.  If such address is ascertained, the Settlement Claims Administrator shall re-send the Notice promptly upon receiving such information, and in no event later than five (5) days after receiving the information.  If no Updated Address is obtained for that Class member, the Class Notice shall be sent again to the Last Known Address.

4.4      The Settlement Claims Administrator shall promptly provide an IRS Form W-9 to Defendants following its engagement by the Parties.  Defendants agree to reasonably

cooperate with the Settlement Claims Administrator, provide accurate information necessary to calculate the amounts of the Settlement Checks, provide reasonably available data to assist the Settlement Claims Administrator in locating Class Members, and provide other reasonably available information related to the administration of the Settlement.

## 5. PRELIMINARY APPROVAL AND CLASS NOTICE.

### 5.1 Preliminary Approval Motion.

(A) Within twenty-one (21) days after executing this Agreement, Plaintiffs shall promptly file a Motion for an Order Preliminarily Approving the Class and Collective Action Settlement and New York and California Class for Settlement Purposes Only ("the Preliminary Approval Motion"). The Preliminary Approval Motion shall be provided to Defendants for review and approval at least seven (7) days prior to filing with the Court, and Plaintiffs shall review and may accept Defendants' proposed changes. Defendants to provide proposed changes within four (4) days of receipt. In connection with the Preliminary Approval Motion, Plaintiffs shall submit to the Court this Stipulation with all exhibits, including the proposed Preliminary Approval Order attached hereto as Exhibit C.

(B) The Preliminary Approval Motion also shall seek the setting of date(s) for individuals to opt out of this Agreement, or provide objections to this Agreement, and for a Fairness Hearing for Final Approval of the Settlement before the Court at the earliest practicable date.

(C) In the Preliminary Approval Motion, Class Counsel shall inform the Court of the intended process to obtain a "Final Approval Order" and a "Judgment of Dismissal" that will, among other things: (1) approve the settlement as fair, adequate and reasonable; (2) incorporate the terms of the Release, as described herein; (3) dismiss the Litigation with prejudice; (4) award Class Counsel fees and costs; and (5) award a Service Award to the Named Plaintiffs as more fully set forth herein. Provided that the terms of this Agreement are adhered to, and Defendants' reasonable changes are incorporated into the Preliminary Approval Motion, Defendants shall not oppose the Preliminary Approval Motion.

### 5.2 Notice to Class Members.

(A) Within twenty (20) days of the Court's issuance of a Preliminary Approval Order, Defendants shall provide the Settlement Claims Administrator and Class Counsel, in electronic form, for all Class Members the following information: name, Last Known Address, email address and internship state, as that information exists in Defendants' records ("Class List"). The Class List and the data and information contained in the Class List shall not be disclosed to anyone external to counsel for the respective parties, and the Settlement Claims Administrator, without the written consent of Defendants. Prior to the production of the Class List, the Settlement Claims Administrator shall execute an agreement, in a form acceptable to Defendants, not to use or disclose the information from the Class List except as is

necessary to perform the services required of the Settlement Claims Administrator or to effectuate the terms of this settlement procedure under this Stipulation. Class Counsel shall destroy the Class List and the data and information contained in the Class List (i) if this Agreement is not finally approved by the Court or is terminated as set forth in Section 8 below, or (ii) within 10 days after the Effective Date.

(B)    If Class Members raise questions with Plaintiff's counsel or the Settlement Claims Administrator relating to their internship with Defendants, Defendants shall provide Plaintiff's counsel or the Settlement Claims Administrator with all information in their possession necessary to address their questions in such detail and as quickly as reasonably possible.

(C)    Within ten (10) days of the receipt of the Class List, or as soon thereafter as practicable, the Settlement Claims Administrator shall mail to all Class Members, via First Class United States Mail, postage prepaid, and via email, the Court-approved Notice of Proposed Settlement of Class and Collective Action Lawsuit and Fairness Hearing.

(D)    The Settlement Claims Administrator shall take reasonable steps to obtain the correct address of any Class Members for whom a Notice is returned as undeliverable and shall attempt re-mailings as described in Section 4.2 and 4.3 of this Agreement. The Settlement Claims Administrator shall notify Class Counsel and Defendants' Counsel of any Notice sent to a Class Member that is returned as undeliverable after the first mailing, as well as any such Notice returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement.

## 6.    CLASS MEMBER RESPONSES TO NOTICE.

### 6.1    Participating Claimants.

(A)    Class Members who wish to become Participating Claimants must fully and timely complete, execute and mail, per the instructions therein, the form entitled Claim Form and Release and the IRS 2014 W-4 Form enclosed with the Notice of Proposed Settlement of Class and Collective Action and Fairness Hearing (and Rule 23 Class Members must not opt out of the Settlement). As stated in the Notice, the Claim Form and Release must be accompanied by a copy of a government-issued identification such as a passport or driver's license. If the Claim Form and Release is not postmarked or transmitted by email or facsimile on or before the Claim Form Deadline, then that Class Member shall be deemed to have forever waived his or her right to be a Participating Claimant and receive payment under this settlement. However, Rule 23 Class Members who do not properly submit an Opt out Statement, and Current FLSA Opt Ins who do not withdraw their consents to join the Litigation before the Court's final approval of this Agreement shall be subject to the Judgment even if they do not submit the Claim Form and Release Claim Form in a timely and proper fashion. Only Participating Claimants shall be entitled to payment pursuant to the settlement and this Stipulation.

11

(B)     A Class Member who files a timely, but incomplete, Claim Form, W-4 Form and/or government issued photo identification shall be notified by the Settlement Claims Administrator of the nature of the defect and shall be instructed by the Settlement Claims Administrator to cure the defect no later than five (5) days before the deadline for the Motion for Judgment and Final Approval.  Any Class Member who fails to cure the defect on or before five (5) days before the deadline for the Motion for Judgment and Final Approval shall not be deemed a Participating Claimant (and shall not receive his or her Settlement Check).  Rule 23 Class Members and Current FLSA Opt-Ins who do not withdraw their consents to join the Litigation and who fail to timely cure the defect shall be subject to the Judgment.

(C)     A Rule 23 Class Member who submits an Opt out Statement and also submits a Claim Form, government-issued identification, and/or IRS 2014 W-4 Form shall be sent a cure letter by the Settlement Class Administrator seeking clarification of whether they intend to opt out of the settlement or become a Participating Claimant.  Absent a response to the contrary, such Rule 23 Class Member shall be deemed to have opted-out of the settlement pursuant to Section 6.2.

**6.2     Rule 23 Class Member Opt outs.**

(A)     Rule 23 Class Members who choose to opt out of the settlement as set forth in this Agreement must mail via First Class United States Mail, postage prepaid, or send via facsimile, a signed Opt out Statement to the Settlement Claims Administrator that states he or she is opting out of the settlement, and include his or her name, address, and telephone numbers and unconditionally states an intention to opt out, such as: "I opt out of the settlement."  To be effective, an Opt out Statement must be postmarked or faxed within sixty (60) days from the mailing of the Notice to the Class Member.  For any deadline under this Agreement that is based on a postmark, in the event that there is no postmark date of the document being mailed by the Class Member, it shall be presumed the document was mailed three (3) days prior to the date received by the Settlement Claims Administrator's, excluding any Sunday or other day for which no postal service was provided.  It is the responsibility of the individual seeking to opt out to retain a copy of the Opt out Statement and proof of timely mailing, emailing or faxing.

(B)     Rule 23 Class Members whose first mailing was returned to the Settlement Claims Administrator as undeliverable shall be allowed to opt out or object up to thirty (30) days from the date of the second mailing.  The Settlement Claims Administrator shall not attempt more than two (2) mailings of the Notice to any Class Member, and no mailing shall occur more than thirty (30) days after the first mailing to Class Members.

(C)     The Settlement Claims Administrator shall keep accurate records of the dates on which it sends Notices to Class Members.

(D)     The Settlement Claims Administrator shall stamp the postmark date on the original of each Opt out Statement that it receives and shall serve copies of each Opt out

Statement on Class Counsel and Defendants' Counsel not later than three (3) days after receipt thereof.  Class Counsel shall promptly file with the Clerk of Court stamped copies of any Opt out Statements.  The Settlement Claims Administrator will, within three business days of the end of the Opt out Period, send a final list of all Opt out Statements to Class Counsel and Defendants' Counsel by both email and overnight delivery.  The Settlement Claims Administrator shall retain the stamped originals of all Opt out Statements and originals of all envelopes accompanying Opt out Statements in its files until such time as the Settlement Claims Administrator is relieved of its duties and responsibilities under this Agreement.

(E)     Any Rule 23 Class Member who does not properly submit an Opt out Statement pursuant to this Agreement shall be bound by the Settlement and the terms of this Agreement and shall have released the Released State Law Claims, as set forth in this Agreement (applicable to the state(s) in which they interned).   Any Class Member who files a Claim Form and Release ("Participating Claimant") shall be bound by the Settlement and deemed to have released both the Released State Law Claims and the Released FLSA Claims, except where a Rule 23 Class Member submits both an Opt out Statement and Claims Form, the conflict shall be resolved as provided in Section 6.1(C).

(F)     Named Plaintiffs shall not opt out of the Settlement, and their execution of this Agreement shall signify their agreement to all of the terms of the Settlement. In the event that Named Plaintiffs or Current FLSA Opt Ins who do not withdraw their consents to join the Litigation before the Court's final approval of this Agreement fail to timely submit a fully completed and properly executed Claim Form and Release and Form W-4, he or she shall nevertheless release all Released Federal Law Claims.

**6.3     Rule 23 Class Member Objections to Settlement.**

(A)     Rule 23 Class Members who do not opt out and who wish to object to the proposed settlement must do so in writing.  To be considered, a written objection must be mailed to the Settlement Claims Administrator via First-Class United States Mail, postage prepaid, and be received by the Settlement Claims Administrator by a date certain within thirty (30) days from the mailing of the Notice.  The written objection must include the words, "I object to the settlement in the Viacom intern case" as well as all reasons for the objection.   Any reasons not included in the written objection shall not be considered.  The written objection must also include the name, address, and telephone numbers for the Class Member making the objection. The Settlement Claims Administrator shall stamp the date received on the original and send copies of each objection to Class Counsel and Defendants' Counsel by email and overnight delivery no later than three (3) days after receipt thereof. Class Counsel shall promptly file the date-stamped originals of any and all objections with the Court.  It is the responsibility of any Class Member who files an objection (an "Objector") to retain a copy of the objection and proof of timely mailing hereunder.

13

(B)     A valid Objector also has the right to appear at the Fairness Hearing either in person or through counsel retained by the Objector.  An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits his or her written objections by including the words, "I intend to appear at the Fairness Hearing" in his or her written objection.  An Objector may withdraw his or her objections at any time.  No Class Member may appear at the Fairness Hearing unless he or she has submitted a valid and timely objection that complies with all procedures provided in this Section and the previous Section.  A Rule 23 Class Member who has submitted an Opt out Statement may not submit objections to the Settlement.

(C)     The Parties may file with the Court written responses to any filed objections no later than three (3) days before the Fairness Hearing.

## 7.     FAIRNESS HEARING AND FINAL JUDGMENT.

**7.1     Motion for Judgment and Final Approval.**  Not later than fifteen (15) days before the Fairness Hearing, Plaintiffs shall submit a Motion for Judgment and Final Approval.  The Motion for Judgment and Final Approval shall be provided to Defendants for review and comment at least seven (7) days prior to filing with the Court, and Plaintiffs shall accept Defendants' reasonable comments.

**7.2     Entry of Judgment.**  At the Fairness Hearing, the Parties shall request that the Court, among other things, (a) certify the Rule 23 Classes for purposes of settlement only, (b) enter Judgment in accordance with this Agreement, (c) approve the settlement and Agreement as final, fair, reasonable, adequate, and binding on all Rule 23 Class Members who have not timely opted out pursuant to Section 6.2, (d) approve the FLSA settlement, and (e) dismiss the Litigation with prejudice.

## 8.     TERMINATION AND ITS EFFECTS.

**8.1     Defendants' Right to Terminate.**  Defendants shall have the absolute discretionary right to terminate this Agreement at any time prior to the Order Granting Final Approval of Settlement in the event that any of the following conditions occur:

(A)     More than four percent (4%) of all Class Members affirmatively opt out of the Settlement Class by submitting timely and valid Opt Outs pursuant to Section 6.2;

(B)     The Stipulation is construed in such a fashion that would require Defendants to pay more than the amounts provided for in this Stipulation;

(C)     The Court does not certify, for settlement purposes only, either a class action or collective action Consistent with Section 5.1; or

(D)     More than 2,480 Participating Claims are filed with the Class Action Administrator.

**8.2     Effect of Termination or Failure to Obtain Preliminary or Final Approval.**  In the event that this Agreement is not approved in its entirety by the Court, excluding

14

modifications that the parties determine in their reasonable and good faith judgment not to be material modifications, or in the event that the settlement set forth in this Agreement is terminated, cancelled, declared void, or fails to become effective in accordance with its terms, or if the Judgment does not become a Final Judgment, or if the Effective Date does not occur, the Parties shall proceed as follows:

(A)     No payments shall be made by Defendants to anyone in accordance with the terms of this Agreement.

(B)     The settlement term sheet (previously agreed to by the Parties) and this Agreement (except for this Section 8.2, the non-disclosure provisions in Section 11.13, and the non-admission provisions in Section 2) shall be deemed null and void, and their terms and provisions shall have no further force or effect.

(C)     Neither this Agreement, nor any other related papers or orders, nor the negotiations leading to the Agreement set forth in this Stipulation may be cited to, used, or deemed admissible in any judicial administrative or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural.

(D)     Litigation shall proceed without prejudice as if this Agreement had not been executed unless the Parties jointly agree to: (1) seek reconsideration or appellate review of the decision denying entry of Judgment, or (2) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement.

(E)     None of the Parties shall be deemed to have waived any claims, objections, defenses, or arguments with respect to the issue of class or collective action certification or the merits of Plaintiffs' claims or any other issue, but rather shall retain the right to assert or dispute all claims and allegations, to assert or dispute all applicable defenses, and to assert or dispute the propriety of class/collective action certification or decertification on all applicable grounds.

(F)     Any Judgment or Order entered by the Court in accordance with the terms of the Agreement shall be treated as vacated, *nunc pro tunc*.

(G)     None of the information provided by Defendants to Class Counsel for purposes of settlement negotiations or obtained by Class Counsel about Class Members as a result of the settlement approval process shall be used by Class Counsel in the Litigation.

(H)     Notwithstanding any other provision of this Agreement, no order of the Court, or modification or reversal on appeal of any order of the Court, reducing the amount of any attorneys' fees or costs to be paid to Class Counsel, or reducing the amount of any Service Payment, shall constitute grounds for cancellation or termination of the Agreement or grounds for limiting any other provision of the Judgment.  Class Counsel retains and reserves all rights to appeal or seek reconsideration of  any order of the Court reducing the amount of attorneys' fees or costs to be paid to Class Counsel and/or any order of the Court reducing the amount of any Service Payment.

15

Defendants shall not oppose the appeal or motion for reconsideration so long as Class Counsel seeks an amount that does not exceed the fees and costs contemplated in this Agreement.

(I)     If the Agreement is terminated after Class Notice is sent, the Claims Administrator shall provide notice to all Participating Claimants informing them that the settlement was voided, that as a result, no payments will be made to Participating Claimants under the Agreement, and that the Litigation will continue, along with any additional information jointly agreed to by Class Counsel and Defendants. Such notice shall be mailed and/or emailed by the Claims Administrator via United States First Class Mail, postage prepaid, to the addresses contained on the Participating Claimant's Consent to Join Settlement Form and/or on his or her Updated Address.  The costs of such mailing shall be split equally between Plaintiffs and Defendants.

(J)     If the classes have already been certified for settlement purposes, the classes that were certified as part of this Agreement shall be decertified and the Parties shall jointly move as soon as practicable to obtain an order granting decertification, and the fact of certification shall not be cited to, used, or admissible in any judicial, administrative, or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural.

## 9.    SETTLEMENT TERMS.

### 9.1   Settlement Amount.

(A)     Defendants agree to pay up to the Gross Settlement Amount (subject to their right to cancel this agreement as set forth in Section 8.1 herein), including all payments to Participating Claimants; Class Counsel's approved attorneys' fees, costs, and expenses related to the Litigation, including all attorneys' fees, costs, and expenses related to the effort to secure Final Judgment (including litigation of any potential objections to the terms of the Stipulation); administrative costs; any approved Service Payments to Named Plaintiffs; and payments for PAGA penalties. Under no circumstances shall Defendants be required to pay or contribute any monies in excess of the Gross Settlement Amount.  No payments shall be made to Opt Outs or to those Class Members who fail to become Participating Claimants, and amounts allocated for these individuals from the Gross Settlement Amount shall not be paid into the QSF and shall be retained by Defendants.

(B)     Provided they have timely received a Form W-9 from the Settlement Claims Administrator and any other tax forms or information needed, by no later than twenty (20) days after the Effective Date, Defendants shall deposit the Settlement Amount, which shall be an amount sufficient to cover all Participating Claimants' payments, the Employer Payroll Taxes, the Court awarded attorneys' fees and costs, the settlement administration fees and costs and Service Award, into the QSF. The portion of the maximum Gross Settlement Amount attributable to FLSA Collective Members or Rule 23 Class Members who do not become Participating

Claimants, and any portion of the maximum Gross Settlement Amount attributable to attorneys' fees and costs, settlement administration fees and costs and/or Service Awards not awarded by the Court shall be retained by Defendants and shall not be deposited into the QSF.

(C)     Within thirty (30) days of the payment by Defendants of the Settlement Amount into the QSF, the Settlement Claims Administrator shall mail the Settlement Checks.  Participating Claimants shall have one-hundred eighty (180) days from the date of mailing to cash their Settlement Checks ("Check Cashing Period").  The Settlement Claims Administrator shall notify the Parties in writing of the date the Settlement Checks shall be sent at least two business days before transmission. Settlement Checks not cashed within 180 days shall be void and a stop-payment directive shall be placed by the Settlement Claims Administrator with the applicable bank. The amounts in the QSF attributable to the void and uncashed Settlement Checks shall revert to Defendants, and shall be returned to Defendants within 90 days following the end of the Check Cashing Period.  Participating Claimants who do not redeem their settlement checks shall remain bound by this Settlement and the Releases in Section 10.2.  This Stipulation and the associated Judgment do not and shall not create any unpaid residue or unpaid residual with respect to the amounts of uncashed checks, and no distribution of such shall be required.  The provisions of any unclaimed property statute or law do not apply to this action or this Stipulation.

(D)     All payments to Participating Claimants made pursuant to this Agreement shall be deemed to be paid to such Participating Claimants solely in the year in which such payments actually are received by the Participating Claimant.  It is expressly understood and agreed that any amount paid to any Participating Claimant shall not create any credit or otherwise affect the calculation of benefits provided under any pension, retirement, retirement savings, excess or supplemental retirement or retirement savings, any deferred compensation, bonus, equity, incentive, severance, displacement, supplemental unemployment, health, life, or disability plan, or any benefit, pension, or other compensation or benefit plan, policy, program, or arrangement (collectively, the "Benefit Plans") provided by Defendants or any Releasee, and no payment made pursuant to this Settlement shall be considered as "Compensation," "Earnings," "Salary," or any similar definition under any Benefit Plans, and are not considered eligible compensation for Benefit Plans, or for Defendants' 401(k) Savings and Retirement Plans, or for any other benefit purposes, or otherwise require any contribution or award under any Viacom Benefit Plan, or otherwise modify benefits, contributions or coverage under any Viacom Benefit Plan.  Nothing in this Section shall be construed to imply that Participating Claimants or Interns are eligible to participate in any Benefit Plans; Participating Claimants, Current FLSA Opt-Ins and Rule 23 Class Members are waiving and releasing their right to participate in any Benefits Plans (as set forth in the release provisions of this Agreement); and Participating Claimants, Current FLSA Opt-Ins and Rule 23 Class Members hereby acknowledge and agree that they are not and never were eligible to participate in any Benefit Plans.

(E)     From the Attorneys' Fees portion of the Settlement Amount, a payment of up to $25,000 shall be made to the LWDA by Class Counsel, representing the LWDA's 75% share of the settlement attributable to PAGA penalties.  In connection with the settlement approval, the LWDA shall be notified by Class Counsel of the existence of the settlement. Should the LWDA object to the amount of this payment, the parties agree to work in good faith to negotiate another agreeable amount.  The portion of PAGA penalties which are to be paid to California-based Interns are included within the Settlement Amount payable to Participating Claimants who were Interns in California.

**9.2    Settlement Checks to Participating Claimants.**

(A)     Each Participating Claimant who timely files a Claim Form, a copy of a government-issued identification such as a passport or driver's license and W-4 Form, and whose Claim Form and W-4 Form are properly completed and submitted in accordance with Section 6.1(A) and (B), shall be issued a Settlement Check by the Settlement Claims Administrator from the QSF in accordance with the Final Approval Order.  Each Participating Claimant will receive a Settlement Check in the gross amount before taxes of Five-Hundred Five Dollars ($505) for each traditional academic semester in which the Participating Claimant was an Intern with Defendants; provided, however, that (i) in no event will any Participating Claimant receive a Settlement Check for more than two traditional academic semesters (totaling One Thousand Ten Dollars ($1,010)), irrespective of the number of academic semesters in which the Participating Claimant was an Intern with Defendants; and (ii) to receive payment for a second traditional academic semester, the Participating Claimant must have been an Intern with Defendants for at least 3 weeks during that second semester.

(B)     The Settlement Checks shall be mailed to Participating Claimants (and attorneys' fees and costs checks wired to Class Counsel) by the Settlement Claims Administrator within thirty (30) days after the Effective Date.  The Settlement Check mailing shall include a Notice to Participating Claimants that their checks shall be subject to a stop-payment directive if not cashed within 180 days of this mailing.

(C)     Defendants and the Settlement Claims Administrator shall exchange such information as is necessary and reasonably available for the Settlement Claims Administrator to make proper tax withholdings and comply with tax reporting obligations as described in Section 9.5.

**9.3    Service Awards.**

(A)     In return for services rendered to the Class Members, at the Fairness Hearing, Named Plaintiffs shall apply to the Court for Service Awards in the amount of $5,000 each from the QSF, and FLSA Collective Member Nicole Rosinsky shall apply for a service award in the amount of $2,500 from the QSF, and FLSA

Collective Member Nikhil Kasbekar shall apply for a service award in the amount of $1,500 from the QSF. Defendants shall not oppose this application.

(B)     The application for the Service Award is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation.  The outcome of the Court's ruling on the application for the Service Award shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval or for Final Judgment and Dismissal.  The amount of Service Award sought but not awarded shall remain part of Class Counsels' fees and costs.

(C)     Within thirty (30) days after the payment by Defendants of the Settlement Amount into the QSF, the Settlement Claims Administrator shall mail the Court-approved Service Award to the Named Plaintiffs and FLSA Collective Members Rosinsky and Kasbekar.

**9.4     Settlement Amounts Payable as Attorneys' Fees and Costs.**

(A)     At the Fairness Hearing and Motion for Final Approval, Class Counsel shall petition the Court for an award of attorneys' fees and costs of no more than $900,000, less an amount equal to the Service Awards and PAGA penalties or 12.5% of the Gross Settlement Amount, to be paid from the QSF.  Defendants shall not oppose such application.  After depositing the Settlement Amount with the Settlement Claims Administrator for the QSF, Defendants shall have no additional liability for Class Counsel's attorneys' fees and costs.

(B)     The substance of Class Counsel's application for attorneys' fees and costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation.  The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval.  Class Counsel shall have the right to appeal the Court's determination with respect to their application for attorneys' fees and costs, which shall not be opposed by the Defendants.  Upon the determination of any such unopposed appeal, fees and costs sought by Class Counsel but not awarded shall be returned to Defendants.

(C)     Within ten (10) days of the payment by Defendants of the Settlement Amount into the QSF, the Settlement Claims Administrator shall wire the Court-approved attorneys' fees to Class Counsel.

**9.5     Tax Characterization.**

(A)     For tax purposes, the payments to Plaintiffs and Participating Claimants pursuant to Section 9.2(A) shall be allocated as follows:  wages (50% of each settlement payment), penalties (25% of each settlement payment) and interest (25% of each settlement payment).  Plaintiffs and Participating Claimants shall be exclusively

responsible for their own portion of payroll and income taxes on the 50% of each settlement payment that is wages, and such amounts shall be withheld from settlement payments.

(B)     That portion of the payments treated as wages pursuant to Section 9.5(A) shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number on an IRS Form W-2. The remaining portion of the payments treated as interest and/or penalties pursuant to Section 9.5(A) shall be made without withholding and shall be reported to the IRS and the payee under the payee's name and social security number on an IRS Form 1099. Payments of Service Awards pursuant to Section 9.3 shall be made without withholding and shall be reported to the IRS and the payee under the payee's name and social security number on an IRS Form 1099. Payments of attorneys' fees and costs pursuant to Section 9.4 shall be made without withholding and reported to the IRS and the payee under the payee's name and taxpayer identification number, which each such payee shall provide for this purpose, on an IRS Form 1099.

(C)     The Settlement Claims Administrator shall timely arrive at an amount equal to the employer's share of the FICA tax and any federal and state unemployment tax due that are traditionally borne by employers, with respect to the amounts treated as wages pursuant to Section 9.5(A) and 9.5(B), shall provide this information to Defendants by no later than ten (10) days after the Effective Date, and this amount shall be paid out of the QSF. The Settlement Claims Administrator shall be responsible for making all reporting, deposits, and withholdings with respect to all amounts payable to Named Plaintiffs and Participating Claimants required pursuant to any federal, state, or local tax law or regulation hereunder under the EIN of the QSF or the Defendants as required by applicable law.

(D)     With respect to the portions of the payments reported as non-wage income, the Named Plaintiffs and Participating Claimants each shall indemnify and hold harmless Defendants for any taxes, penalties, interest or other amounts due or owing by that individual Named Plaintiffs or Participating Claimants on such payments. Other than as set forth above, Defendants shall not make from the payment to the Named Plaintiffs and Participating Claimants any deductions, withholdings, or additional payments, including without limitation, medical or other insurance payments or premiums, employee 401(k) contributions or matching employer contributions, wage garnishments, or charity withholdings, and entry of the Final Approval Order and Judgment by the Court shall be deemed authority not to make such deductions, withholdings, or additional payments. Any amount paid to the Named Plaintiffs and Participating Claimants shall not create any credit or otherwise affect the calculation of any deferred compensation, benefit, pension, or other compensation or benefit plan provided by Defendants. Named Plaintiffs, on behalf of the Class Members and the Participating Claimants, acknowledge and agree that they have not relied upon any advice from Defendants as to the taxability of the payments received pursuant to this Agreement.

20

(E)     The Settlement Claims Administrator shall handle all tax reporting with respect to the payments made pursuant to this Agreement, and, regardless of any provision in this Agreement, shall report the payments in accordance with applicable law.

**9.6     No Further Obligation to Administrator and Class Counsel.**  Defendants' complete obligations to Class Counsel and the Claims Administrator are set forth in this Stipulation. Class Counsel and the Claims Administrator shall hold Defendants harmless for an award of fees or costs beyond those made in accordance with this Stipulation and shall not seek to recover any fees or costs in excess of the amounts specifically set forth in this Stipulation, other than actual costs incurred in the event Defendants materially breach this Stipulation.  Except as provided in this Agreement, Class Counsel and Named Plaintiffs, on behalf of the Class Members individually and collectively, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she or they may have against Defendants for attorneys' fees or costs associated with Class Counsel's representation of the Named Plaintiffs and Class Members.   Class Counsel further understands and agrees that any fee payments approved by the Court shall be the full, final and complete payment of all attorneys' fees and costs associated with Class Counsel's representation in the Litigation.

## 10.     RELEASES.

By operation of the entry of the Final Approval Order and Judgment, and except as to such rights or claims as may be created by this Agreement:

**10.1     Rule 23 Class Members.**  Each Rule 23 Class Member who does not timely and validly opt out pursuant to this Agreement, on behalf of himself/herself, his/her heirs, representatives, successors, assigns and attorneys fully, finally and forever releases, and dismisses with prejudice, relinquishes and discharges the Released State Law Claims (applicable to the state in which they interned), regardless of whether such individual files a Claim Form.

**10.2     Participating Claimants.**  Each Participating Claimant, on behalf of himself/herself, his/her heirs, representatives, successors, assigns and attorneys fully, finally and forever releases both the Released State Law Claims (applicable to the state in which they were an Intern) and the Released Federal Law Claims.

**10.3     Current FLSA Opt-Ins.**  Each Current FLSA Opt-In who does not withdraw his/her consent to join the Litigation before the Court's final approval of this Agreement, on behalf of himself/herself, his/her heirs, representatives, successors, assigns and attorneys fully, finally and forever releases, and dismisses with prejudice, relinquishes and discharges the Released Federal Law Claims, regardless of whether such individual files a Claim Form.

**10.4     Named Plaintiffs.**  Named Plaintiffs forever and fully release Defendants and the Releasees from the following:

(A)     The Released Federal Law Claims;

21

(B)     The Released State Law Claims (applicable to the state in which he or she was an intern); and

(C)     Any and all claims, actions, causes of action, lawsuits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, bonuses, controversies, agreements, promises, claims, charges, complaints and demands whatsoever, whether in law or equity, known or unknown, which against the Defendants or Releasees the Named Plaintiffs and their heirs, executors, administrators, successors, and assigns, ever had, may now have, or hereafter later determine that has or had upon, or by reason of, any cause or thing whatsoever, including, but not limited to relating to their internship, including, but not limited to, claims arising under the Americans With Disabilities Act, the National Labor Relations Act, the Fair Labor Standards Act, the Equal Pay Act, the Employee Retirement Income Security Act of 1974, including but not limited to, breach of fiduciary duty and equitable claims to be brought under §1132(a)(3) ("ERISA"), the Worker Adjustment and Retraining Notification Act, Title VII of the Civil Rights Act of 1964, the Vocational Rehabilitation Act of 1973, the Civil Rights Acts of 1866, 1871 and 1991, including Section 1981 of the Civil Rights Act, the Family and Medical Leave Act, and/or any other federal, state or local human rights, civil rights, wage-hour, pension or labor law, rule, statute, regulation, constitution or ordinance and/or public policy, contract or tort law, or any claim of retaliation under such laws, or any claim of breach of any contract (whether express, oral, written or implied from any source), or any claim of intentional or negligent infliction of emotional distress, tortious interference with contractual relations, wrongful or abusive or constructive discharge, defamation, prima facie tort, fraud, negligence, loss of consortium, malpractice, breach of duty of care, breach of fiduciary duty or any action similar thereto against Defendants or Releasees, including any claim for attorneys' fees, expenses or costs based upon any conduct from the beginning of the world up to and including the date that the Named Plaintiffs executed this General Release; provided, however, that Named Plaintiffs do not waive any right to file an administrative charge with the Equal Employment Opportunity Commission ("EEOC"), subject to the condition that they agree not to seek, or in any way obtain or accept, any monetary award, recovery or settlement therefrom; and further provided, however, that Named Plaintiffs do not release any claim for breach of the terms of the Agreement.  Nor shall anything in this Release prohibit or restrict Named Plaintiffs from: (i) providing information to, or otherwise assisting in, an investigation by Congress, the Equal Employment Opportunity Commission, the Securities and Exchange Commission ("SEC") or any other federal regulatory or law enforcement agency in response to any request for information by such agency; or (ii) complying with a lawful subpoena or other legal process, subject to the terms of this Agreement.

## 11.     INTERPRETATION AND ENFORCEMENT.

**11.1    Cooperation Between the Parties; Further Acts.**  The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms.  The Parties shall work together, diligently and in good

faith, to obtain expeditiously a Preliminary Approval Order, Final Approval Order, and final Judgment and dismissal. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

11.2   **Non-Interference With Settlement.**   Pending the Court's decision on final approval of the Settlement and entry of the Court's Final Approval Order and Judgment, Plaintiffs and Current FLSA Opt-Ins and anyone acting on behalf of Plaintiffs or any Current FLSA Opt-In shall be barred and enjoined from:  (a) further litigation in this Litigation; (b) filing, or taking any action, directly or indirectly, to commence, prosecute, pursue or participate, individually or on a class or collective action basis, any action, claim or proceeding against Defendants in any forum in which any of the claims released by this Agreement are asserted, or which in any way would prevent any such claims from being extinguished; or (c) seeking, whether on a conditional basis or not, certification of a class or collective action that involves any such claims.

11.3   **No Assignment.**   Class Counsel, Named Plaintiffs and Current FLSA Opt-Ins represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

11.4   **Entire Agreement.**   This Agreement and its exhibits constitute the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties (including the parties' settlement term sheet) shall be deemed merged into this Agreement.

11.5   **Binding Effect.**   This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Litigation.  This Agreement shall be binding upon the Parties and, with respect to the Named Plaintiffs, their spouses, parents, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys, and assigns.

11.6   **Arms' Length Transaction; Materiality of Terms.**   The Parties have negotiated all the terms and conditions of this Agreement at arms' length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

11.7   **Captions.**   The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

11.8   **Construction.**   The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**11.9**    **Governing Law.**  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**11.10**   **Continuing Jurisdiction.**  The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the Settlement contemplated thereby.

**11.11**   **Waivers, etc. to Be in Writing.**  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**11.12**   **CAFA Notice.**  Defendants shall timely provide notice as required by the Class Action Fairness Act ("CAFA") and provide copies of such to Class Counsel.  A copy of the CAFA Notices are attached as Exhibit D, and may be modified by Defendants as circumstances warrant.

**11.13**   **Non-Disclosure/Non-Disparagement.**  Plaintiffs agrees prior to filing of the Motion for Preliminary Approval not to disclose to individuals other than immediate family, tax preparers, and attorneys the terms of this Settlement or the negotiations leading thereto except in court papers or if required by legal process or protected by law.  After the filing of the Motion for Preliminary Approval, aside from the disclosures in the Notice attached hereto as Exhibit B and in court papers, the maximum confidentiality allowed by law applies to the terms of this Settlement and the negotiations leading thereto.  After the filing of the Motion for Preliminary Approval, neither Plaintiffs nor Class Counsel shall, directly or indirectly, issue or cause to be issued any statements to the media or engage in any other publicity regarding the Stipulation or the Settlement, nor shall they issue any notice of the Settlement to Class Members (other than communications with the Named Plaintiff, or in response to any inquiry by a Class Member) except for the Notices issued through the Settlement Claims Administrator as set forth in this Agreement.  Neither Plaintiffs nor Class Counsel, directly or indirectly, shall issue a press release, hold a press conference, publish information about the settlement negotiations on any website, or otherwise publicize the settlement or negotiations. The parties may publish information about the settlement to the extent that such information is otherwise publicly available.  Plaintiffs and Class Counsel agree not to respond to any press inquiries concerning the settlement except to refer reporters to the papers filed with the District Court, unless the statement is mutually agreed upon by Plaintiffs' counsel and Defendants' counsel.  Plaintiffs further agree not to make disparaging comments relating to Defendants.

**11.14   Counterparts.**  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**11.15   Facsimile and Scanned Signatures.**  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

**WE AGREE TO THESE TERMS,**


DATED:  _____, 2015          **CASEY OJEDA**


_____


DATED:  _____, 2015          **KARINA REYNAGA**


_____


**VIACOM INC., ON BEHALF OF ALL DEFENDANTS**


DATED:  _____, 2015          By:  _____


Its:  _____

DEFENDANTS' COUNSEL

DATED:_____, 2015

**DAVIS WRIGHT TREMAINE LLP**


By: _____
Lyle S. Zuckerman

Michael Goettig
1633 Broadway, 27th Floor
New York, New York 10019
Telephone: (212) 603-6452
Fax: (212) 379-5222


CLASS COUNSEL:

DATED: _____, 2015

**VIRGINIA & AMBINDER, LLP**

By:      _____
        LaDonna Lusher

Lloyd Ambinder
Kara Miller
Suzanne Leeds
111 Broadway, Suite 1403
New York, New York 10006
Telephone: (212) 943-9080
Fax: (212) 943-9082


DATED: _____, 2015

**LEEDS BROWN LAW, P.C.**


        _____

By:      Jeffrey K. Brown

Michael Tompkins
One Old Country Road, Suite 347
Carle Place, NY 11514
Telephone: (212) 309-6960