

27th Floor
1633 Broadway
New York, NY  10019-6708

**Lyle S. Zuckerman**
212-603-6452 tel
212-489-8340 fax

lylezuckerman@dwt.com

April 3, 2015

**VIA ECF**
Hon. Gabriel W. Gorenstein
United States District Court, Southern District of New York
500 Pearl Street
New York, New York

Re:   *Ojeda and Reynaga v. Viacom, Inc.*, 1:13-cv-05658

Your Honor:

      On behalf of Defendants,[1] we write to respond to certain inquiries posed by the Court during the March 13, 2015 telephonic conference.  Defendants respectfully submit that, in light of the discovery conducted to date, the developing body of relevant law, and the course of the parties' negotiations in reaching this settlement, the terms under which the parties propose to settle this matter – which have been slightly modified in accordance with the Court's suggestions – are eminently fair and reasonable and should be preliminarily approved.

      **Inquiry #1:  Whether the Settlement is Substantively Reasonable**

      Under the Agreement, each Participating Claimant will receive a $505 payment for each semester s/he participated in one of Viacom's internship programs (with a limit of two semesters, as discussed below, and minus applicable taxes and deductions).  This amount is more than fair and reasonable to the Intern class.

      (a)   <u>The risk attendant to further litigation of class issues warrants settlement</u>

      At the outset, the risks to Plaintiffs of continued ligation are enormous, most notably because Viacom is very likely to prevail on a motion to decertify the FLSA collective and in opposition to any motion for Rule 23 class certification.  When granting conditional certification in this case – the standard for which is an exceedingly low bar – Judge Furman observed that "the question is a close one in some respects."  4/4/2014 Opinion and Order.  Since that decision, Viacom deposed the named plaintiffs and two opt-in plaintiffs, and their testimony has further

---

[1] Capitalized terms not defined herein have the meanings attributed to them in the Joint Stipulation of Settlement and Release (Docket #103-1).

DWT 26444836v4 0061172-000029

Anchorage   New York   Seattle
Bellevue    Portland   Shanghai
Los Angeles San Francisco Washington, D.C.

www.dwt.com

Magistrate Judge Gorenstein
April 3, 2015
Page 2

highlighted why class or collective treatment is inappropriate in the event that this case proceeds:

- The deponents testified that they engaged in vastly different activities during their internships, ranging from web page design to human resources and marketing. Even the two deponents who interned in a human resources department engaged in wildly different activities and learned different skills.

- Each of the deponents testified that they experienced different degrees and quality of supervision by Viacom employees.

- Some of the deponents engaged in some or all of the educational and social opportunities made available to them – seminars by Viacom executives, resume writing workshops, ticket "raffles," and Intern-specific social gatherings – while others did not. For example, purported New York class representative Ojeda claims *never* to have been invited to participate in any such events, whereas opt-in plaintiff Rosinksy, who also interned in New York, testified that she was invited to those events, and chose to attend only some of them.

- None of the deponents – including the putative class representatives – had first-hand knowledge of any other Intern's experiences, including of those Interns who were placed in the same department as them.

- Purported California class representative Reynaga testified that, due to her age, graduate student status, and access to confidential information, she felt that her interests were more aligned with Viacom supervisors than with her fellow Interns.

This testimony indicates that, in the absence of a settlement, the Interns' widely varying individual circumstances would preclude a finding that this matter should proceed as either a collective or class action. *See, e.g., DeSilva v. North Shore-Long Island Jewish Health System, Inc.*, No. 10-CV-1341 (E.D.N.Y. June 5, 2014) (decertifying a collective and denying motion to certify a class upon a finding that "The record demonstrates that Plaintiffs work or worked in a wide variety of departments at a vast array of locations and held a diverse collection of positions… Analyzing each Plaintiff's unique employment situation would require the kind of individualized inquiry that is antithetical to collective action treatment," citations omitted). This is so, even under the most conservative reading of the current state of the law. Assuming for the sake of argument that any productive work performed by an Intern for the benefit of the host is compensable under the FLSA and state wage payment laws, it is nevertheless the case that such a standard necessarily involves an individualized inquiry which is not susceptible to class or collective treatment.

Magistrate Judge Gorenstein
April 3, 2015
Page 3

The risk to Plaintiffs of FLSA decertification and denial of Rule 23 certification is likely to increase if the Second Circuit issues a decision on the *Fox Searchlight* and *Hearst* appeals[2] that is consistent with the panel's questions and comments at oral argument. Indeed, at the January 30, 2015 oral argument on those appeals, the Court repeatedly expressed its reluctance to defer to or adopt the Department of Labor's rigid six-factor test to determine whether an internship is a *bona fide* training program. Rather, the Court signaled a strong likelihood that it will adopt something akin to the "primary beneficiary test" that Fox and Hearst were championing, and which Judge Baer applied when he denied the plaintiffs' motion for summary judgment and class certification in the *Hearst* case.[3] Under this test, a court assesses all material aspects of the intern relationship (and does not limit its analysis to the six factors identified under the DOL's test) to determine whether the primary beneficiary of that relationship is the intern or the host. Absent settlement, Viacom will contend that discovery has revealed and will reveal such a preponderance of individualized facts and circumstances that the "primary beneficiary test" dictates denial of collective and class treatment. Against the risk of such an outcome in the Second Circuit, Plaintiffs' desire to compromise their claims on the terms set forth in the settlement agreement is entirely rational, and should be preliminarily approved by the Court.

In the unlikely event that the Second Circuit enters an order embracing the *Hearst* and *Fox Searchlight* plaintiffs' position and endorsing the DOL's rigid six-factor test, Plaintiffs here would find little comfort. It would remain the case that the Interns' experiences with Viacom were so individual and contingent upon, among other things, their respective locations, departments and supervisors, that class and collective treatment would simply not be feasible.

(b) <u>The risk of further litigation on the underlying substantive claims warrants settlement</u>

To prevail on their underlying substantive claims, Plaintiffs would first need to demonstrate – despite all the evidence to the contrary – that they were employees entitled to compensation. It is Defendants' position that they will be unable to prevail on this issue.

If the parties are unable to settle this action at this juncture, Viacom will submit evidence supporting its argument that the Interns are not entitled to recover *any* wages because they were properly classified as non-employees. To be clear, this is not a "misclassification" case where an individual's status as an employee and attendant entitlement to compensation is undisputed;

---

[2] *Glatt v. Fox Searchlight Pictures*, 13-4481-cv; and *Wang v. Hearst*, 13-4480-cv.

[3] *See* "2nd Circ. Skeptical Of DOL Test At Intern Wage Arguments," Law360.com, Jan. 30, 2015 ("[t]he Second Circuit was openly critical of a six-factor U.S. Department of Labor test backed by both the agency and former unpaid interns pursuing closely-watched wage class actions against the Hearst Corp. and Fox Entertainment Group Inc. at oral arguments Friday morning."); "Judges Grapple With Test Under FLSA for Interns," Mark Hamblett, New York Law Journal, Feb. 2, 2015 ("Donnellan also got word from [Judge] Wesley on which way the court was headed[:] 'I think you've found your three skeptics as to the hard and fast six-factor rule,' he said.")

Magistrate Judge Gorenstein
April 3, 2015
Page 4

rather, this is a case where Plaintiffs expressly acknowledged that they were not employees and would not be entitled to any wages whatsoever in connection with their participation in Defendants' internship programs.

Moreover, as summarized above, the questions and commentary from the Second Circuit Court of Appeals during oral argument on the *Fox Searchlight* and *Hearst* appeals strongly suggested that, on the question of whether an Intern is more properly classified as an employee, the Court will reject the DOL's six-factor test in favor of a standard of review that takes into account the experiences of individual Interns. In the absence of a settlement, Viacom will submit evidence concerning the various educational and social activities made available to Interns, including those which provided Interns with "skills that are fungible within the industry" and provided Interns the primary benefit of the relationship. *Glatt v. Fox Searchlight*, No. 11 Civ. 6784 (WHP) (S.D.N.Y. June 11, 2013), *quoting Reich v. Parker Fire Prot. Dist.*, 992 F.2d 1023, 1028 (10th Cir. 1993). For instance, named plaintiff Ojeda testified at deposition that, over the course of his internship, he received extensive training in Netbiscuits – software used in the design and analysis of web pages scaled to mobile devices. Over the course of Rosinsky's internship, she received full training in PeopleSoft, a widely used tool for the maintenance and analysis of Human Resources Information System (HRIS) data. As of the time of their depositions, both Ojeda and Rosinsky were employed in their chosen lines of work (Ojeda was developing mobile interfaces for the New York Times and Rosinsky was a Human Resources professional with NASDAQ). In the absence of a settlement, Viacom will demonstrate that its unpaid internship programs operated precisely as designed: they provided college students with real-world experience that supplemented their classroom learning which they could then use in their efforts to secure paid employment.

What's more, even if some Interns were able to demonstrate that they are entitled to compensation for certain of their internship activities, the lack of records reflecting the time Interns spent on those activities constitutes an insurmountable hurdle in an individual assessment of damages. Because Viacom did not treat the Interns as employees, it had no policy requiring them to record the time that they spent engaged in internship activities. And, certain internship activities offered by Defendants (*e.g.*, resume writing workshops, round-table discussions with Viacom executives, and various social events) were unquestionably for the benefit of the Interns, and are not compensable as "work." *Gibbs v. City of New York*, No. 12-CV-8340 (S.D.N.Y. Jan. 23, 2015) (quoting *Reich v. N.Y. City Transit Auth.*, 45 F.3d 646, 651 (2d Cir. 1995) in support of the rule that "the basic principle that underlies the FLSA [is that] [e]mployees are entitled to compensation only for 'work'"). In most instances, then, former Interns wishing to participate in this lawsuit would likely rely upon nothing more than their own memories of their internship experiences in support of their claims for hours worked. In light of the fact that only those

Magistrate Judge Gorenstein
April 3, 2015
Page 5

Interns whose internship preceded the summer of 2013[4] are eligible to assert claims in this action, such recollections are very likely to be general and imprecise. Indeed, at their depositions, Ojeda, Reynaga, Rosinsky and Kasbekar all admitted that their recollections concerning the duration of their internship were inaccurate. In the absence of a settlement, Viacom will argue that such testimony cannot be considered as a reliable or accurate measure of compensable time worked. *See, e.g., Holaway v. Stratasys, Inc.*, No. 14-1146 (8th Cir. Nov. 6, 2014) ("contradictory and bare assertions" unsupported by other evidence insufficient to sustain an award of unpaid wages).

Finally, Plaintiffs' case will not be tried before a jury. To the extent that they may have perceived some advantage in doing so, that is now foreclosed.

    (c)  <u>The amount of the settlement payment is otherwise fair and reasonable</u>

The amount of the settlement, a $505 gross payment (which excludes fees and costs), is a fair and reasonable resolution of the Interns' dubious claims.

Initially, this is not the total value of the internship to the Interns, nor the total costs of the internship to Viacom. Viacom expended significant resources – both in terms of employee time and financial resources – developing and administering the internship programs. The Interns were eligible to receive academic credit for participating in Viacom programs; many received multiple credits (as many as three). Of course, they also received the educational and professional benefits of the programs, which helped thousands to launch their careers during an era of historically high unemployment rates.

From Plaintiffs' perspective, Interns are receiving a payment representing the minimum wage for approximately 60-70 hours over a 10 week period (depending upon the state in which they interned, and the calendar year of their internship). To calculate the precise hourly rate that the proposed payment constitutes, however, is impossible. As noted above, Viacom did not track the hours Interns participated in its varied programs. (Because the Interns were not employees, Viacom was not obligated to maintain time records.) Although Interns in conjunction with their departments typically developed an individualized schedule for the internship, that schedule may have been altered or not complied with for myriad reasons, including the Intern's academic workload and exams, or personal or work conflicts. Opt-in plaintiff Kasbekar, for example, exited his internship about half-way through the semester. Of those who participated for the full semester, some did so two days per week, and others three days per week. Additionally, that portion of Interns' time spent shadowing Viacom employees, attending classroom-like

---

[4] In the summer of 2013, out of an abundance of caution, Viacom began compensating its Interns for time spent engaged in internship activities.

Magistrate Judge Gorenstein
April 3, 2015
Page 6

educational seminars, enjoying social gatherings, or engaged in other activities is non-compensable (even if a jury ultimately determines that some activities constituted compensable work).

There is no method, short of thousands of individual mini-trials, to determine the number of hours each student participated in his or her individual internship program (and in those activities which could even be argued to constitute work). The need for such mini-trials, of course, only underscores how inappropriate collective or class certification would be. Plaintiffs' motion for FLSA conditional certification alleged that the internship programs anticipated that Interns would spend about 16 hours per week engaged in their panoply of activities and programs over a 10 week period. (See Dkt. #27, pp. 7-8). Thus, even if an Intern participated during this entire period, they would be receiving a gross settlement payment that amounts to about half of what they would have been paid in gross wages. Under these circumstances, the amount of the payment is more than reasonable, as courts routinely approve settlements which "may only amount to a fraction of the potential recovery…" *Dupler v. Costco Wholesale Corp.*, 705 F.Supp.2d 231, 246 (E.D.N.Y. 2010); quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 (2d Cir. 1974); *Grinnell*, 485 F.2d at 455 n.2 ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million").

> **Inquiry #2: Whether the Court Should Consider The *Hearst* and *Fox Searchlight* Decisions Upon Plaintiffs' Anticipated Motion for Final Approval of the Settlement[5]**

(a) The Court should not disturb the settlement based on subsequent legal precedent, including because the parties have taken into consideration the full range of potential outcomes and have determined that the settlement is in their respective best interests

The Court should view the reasonableness of the settlement through the lens of the facts and circumstances at the time the parties struck their bargain, and should not defer judgment pending the Second Circuit's decisions in *Fox Searchlight* and *Hearst*.

The parties in this action reached a meeting of the minds upon weighing the various risks, rewards, costs and inconveniences of continued litigation. At the forefront of the negotiations leading up to the proposed settlement was the uncertainty in the current state of the law (the *Hearst* and *Fox* cases were decided differently by the District Court) and the pending Second

---

[5] More specifically, Your Honor wanted to know whether a decision weighing heavily in the intern-plaintiffs' favor would allow (or compel) this Court to reject the settlement at the final approval hearing later this year, after preliminarily approving it presently (and after the settlement notification and claim procedures are complete).

Circuit oral argument and decision. At the time, each side believed that the Second Circuit would favor its position, but calculated the potential risks if it did not. This factored heavily into the parties' respective settlement positions. (Now, with the benefit of oral argument, the parties have a glimpse into the Second Circuit's viewpoint. Though it appears to be leaning decidedly in favor of Viacom's position, Viacom remains willing to proceed with the agreement. We would have expected the same from Plaintiffs' counsel if the implications of oral argument in the Second Circuit had been otherwise.) Under analogous circumstances, courts have denied parties' attempts to rewrite the terms of settlement agreements simply because of an intervening change in the relevant body of law. *See, e.g., In re Lyons Transportation Lines, Inc.*, 163 B.R. 474, 476 (W.D. Pa. 1994) ("The agreement which the parties entered into was appropriate at the time considering the range of probabilities, the degree of uncertainty, and the costs of continued litigation. In view of [an intervening change to the relevant law], Hannay cannot retract the settlement to which it had agreed."); *In re Eagle-Picher Industries, Inc.*, 197 B.R. 260, (S.D. Ohio 1996) (finding objections to proposed settlement based upon possible changes in relevant law without merit and concluding that "We cannot accept the thought that arms-length negotiations between Eagle-Picher and the EPA did not take into account the possibility of a change in the law. The parties were certainly well informed about the law, and free to factor the potential amendments into the settlement value which was ultimately agreed upon."). If the courts were not to view the reasonableness of a settlement against the backdrop of the parties' relative positions at the time the compromise was forged, courts and litigants would have endless opportunity to Monday-morning quarterback the parties' decisions taking into account uncertainties (then resolved) which led to settlement.

   Indeed, delaying judgment on these issues threatens to extinguish the claims of former Interns who would otherwise be eligible to participate as members of the FLSA Collective. Due to the transitory nature of the Interns' experience with Viacom, which typically lasted no longer than a single semester, the ongoing running of the limitations period also weighs heavily in favor of settlement now. In the interest of obtaining FLSA releases from the greatest number of former Interns who may elect to claim that they are entitled to unpaid wages attendant to their internships, Viacom has agreed to send Notices to "Current FLSA Opt-Ins and individuals who were Interns for Defendants during the period April 1, 2012 through June 1, 2013" – effectively giving four semesters' worth of former Interns (in addition to those which have already opted in to this action) the opportunity to participate in the proposed settlement. Settlement Agreement, § 1.15. Of course, even the claims of those individuals may be time-barred if they do not opt in to this action within three years of the last day of their internship. Settlement Agreement, § 1.25(A); *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 449 (S.D.N.Y. 2011) ("In a collective action suit such as this, the statute of limitations period continues to run with respect to each potential plaintiff's collective action claim until that plaintiff files the written consent form opting into the suit," citations omitted).

Magistrate Judge Gorenstein
April 3, 2015
Page 8

In the absence of a settlement now, it will be incumbent upon Interns to prove that any violation of the FLSA on the part of Viacom was willful in order to extend the statute of limitations from two to three years. *See Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009) *and* 29 U.S.C. § 255(a). Viacom will vigorously oppose any such motion. In light of the unsettled legal standard by which *any* intern is to be evaluated as either a trainee or an employee, Plaintiffs will be unable to demonstrate that Viacom "either knew or showed reckless disregard for the matter of whether its conduct [in administering a successful and well-regarded unpaid internship program] was prohibited" by the FLSA. *Young*, 586 F.3d at 207.[6] Applying the FLSA's two-year limitations period to the universe of potential participating claimants, it is entirely possible that the federal claims of all Interns will be time-barred by the time the Court orders Notice to be issued.

(b)     The parties respectfully seek a determination on this question at this time

Viacom has agreed to be bound by the settlement reached by the parties despite the Second Circuit's anticipated decisions in *Fox Searchlight* and *Hearst*. As the Court is aware, the settlement process is lengthy, and Viacom will incur attorneys' fees, experience certain costs and business disruption in assisting the administration of the settlement process, and be required to report the settlement to various constituencies (as required by internal processes and law), among other things. As a result, Viacom is reluctant to subject itself to these burdens and costs in the absence of a determination at this stage that the Court will render a decision upon a motion for final approval of the settlement irrespective of the decisions in the *Fox Searchlight* and *Hearst* cases. We understand that Plaintiffs are of the same mind: they would not want to proceed with the settlement process were Viacom to reserve the right to renegotiate should the Second Circuit rule as oral argument suggested it will. If the parties cannot expect to consummate the deal they have agreed upon at the end of the notice process regardless of how the Second Circuit rules, neither side will have much incentive to undertake the process.

**Inquiry #3:  Why Interns May Recover Payments For A Maximum Of Two Semesters**

Viacom's programs were designed to provide a one-semester educational opportunity (for which Interns would receive academic credit for an equivalent one-semester class). While there may be a handful of instances where an Intern's participation may have leaked into a second semester for reasons unique to specific Interns (perhaps to see the results of a project that Intern was tracking), the parties are not aware of any Intern who participated in a program which spanned three semesters.

---

[6] For similar reasons, Plaintiffs will be unable to demonstrate entitlement to liquidated damages under the FLSA or New York Labor Law.

Magistrate Judge Gorenstein
April 3, 2015
Page 9


Because the program intake and departure procedures were not meant to accommodate more than a one-semester internship, it is doubtful that Viacom will have accurate records concerning a second semester's internship – and almost certainly not a partial additional semester. Thus, the two-semester settlement payment limit is intended to provide an enhanced payment for the small number of Interns who will be exceptions to the one-semester program standard, while protecting Viacom against requests for payments covering unlimited semesters (by participants who may either intentionally overstate their time with Viacom or simply misremember it).

### Inquiry #4:  The Agreement's Termination Provision

Viacom considered the myriad factors any defendant would consider in deciding whether to settle this litigation, including its strong legal positions (see above) and the cost and inconvenience of further litigation. In addition, Viacom was dubious from the outset that the vast majority of students who meaningfully participated in its popular internship programs would express interest in joining this lawsuit, precisely because it provided them with an enriching educational experience and launched many careers. Viacom's expectations on this front were substantiated when less than 5% of the Interns eligible to participate in the FLSA collective action sought to do so. Taking all of the facts and circumstances into account, Viacom determined a maximum settlement value to which it was amenable. This maximum represents the threshold over which Viacom has the option to terminate the agreement. This is not unreasonable, given that, if the threshold is exceeded by a significant margin, the total value of that settlement would exceed the costs of further litigation (perhaps by millions), and it would present an entirely unwarranted obligation in view of Viacom's strong legal defenses. Of course, if the threshold is only marginally surpassed, the parties' counsel will reconvene in the hopes of forging a modified settlement.

### Inquiry #5:  Whether Participating Claimants are Required to Indemnify Viacom

The sole indemnification obligation in the settlement agreement relates to the payment of taxes. Specifically, the settlement agreement provides that "[w]ith respect to the portions of the payments [to Interns] reported as non-wage income, the Named Plaintiffs and Participating Claimants each shall indemnify and hold harmless Defendants for any taxes, penalties, interest or other amounts *due or owing by that individual Named Plaintiff or Participating Claimant* on such payments." Thus, the obligation relates only to taxes that Interns are required to pay, but fail to do so, on the non-wage portions of the settlement consideration. This is a routine provision in any settlement between an (alleged) employer and (alleged) employees. A similar concept had been repeated in the Claim Form but has now been removed as duplicative and unnecessary.

Magistrate Judge Gorenstein
April 3, 2015
Page 10

### Inquiry #6: The Reversion of Unclaimed Funds

Under the terms of the parties' settlement agreement, Interns have sixty days after Notices are sent to become Participating Claimants. At the end of that period, Defendants will deposit funds sufficient to pay, in relevant part, "all payments to Participating Claimants" into the Qualified Settlement Fund. Settlement Agreement, § 9.1(A). It is anticipated that all of the Interns who have gone to the trouble of completing a claim form and submitting it with accompanying documentation to the Settlement Claims Administrator will cash the checks they receive. However, in the event that some Participating Claimants do not cash those checks, then the Settlement Agreement calls for the funds allocated to those issued but uncashed checks to revert to Defendants. Settlement Agreement, § 9.1(C) ("The amounts in the QSF attributable to the void and uncashed Settlement Checks shall revert to Defendants, and shall be returned to Defendants within 90 days following the end of the Check Cashing Period"). It is not anticipated that more than a handful of issued checks will remain uncashed, especially in light of the parties' agreement to send an email reminder to Participating Claimants after the checks are issued. Nonetheless, Defendants have worked with Plaintiffs to identify a charity satisfactory to all parties to which such residual funds may be donated, rather than having them revert to Defendants. All such funds will now be donated to The Legal Aid Society in New York City in the name of Viacom, Inc.

### Other Revisions to the Agreement, Notice and Claim Form

In accordance with the Court's guidance during the telephonic conference, the parties have modified the Settlement Agreement, Notice and Claim Form, which are attached to this letter as Exhibits A, B and C. Notably: (i) Participating Claimants may provide a utility bill or a college picture identification in lieu of government identification as proof of identity; (ii) each Participating Claimant no longer will be required to insert his or her Social Security Number on the Claim Form, because it must appear on the submitted Form W-4 in any event; (iii) the non-disclosure/non-disparagement provision has been deleted from the Settlement Agreement; (iv) the federal and state releases of claims are now an attachment to the Claim Form, and a revised (shortened and simplified) description of them has been included in the Notice; (v) the Notice provides a website address where Interns may review the complete Settlement Agreement, and encourages them to do so; and (vi) Interns will receive an email stating that settlement payment checks have been mailed and will expire if not promptly cashed.

*   *   *

Defendants respectfully submit that the Settlement Agreement is eminently fair and reasonable. Accordingly, they respectfully request that it be preliminarily approved (along with the proposed Notice and Claim Form), and that the Court indicate in an appropriate manner that

Magistrate Judge Gorenstein
April 3, 2015
Page 11

it will evaluate the settlement for final approval based upon the parties' understanding of the litigation risks and possible outcomes as of the date of the preliminary approval.

Respectfully submitted,

Davis Wright Tremaine LLP

*[signature]*

Lyle S. Zuckerman
Michael J. Goettig

cc:  Lloyd Ambinder, Esq.
     LaDonna Lusher, Esq.
     Jeffrey Brown, Esq.