

40 Broad Street, 7th Floor
New York, New York 10004
Telephone: 212.943.9080
www.vandallp.com

**Lloyd R. Ambinder**
212.943.9081
lambinder@vandallp.com

April 3, 2015

**VIA ECF**
Hon. Gabriel Gorenstein
United States District Court, Southern District of New York
500 Pearl Street
New York, New York

Re: *Ojeda et al. v. Viacom, Inc. et al.*, 1:13-cv-05658

Dear Judge Gorenstein,

Plaintiffs submit this letter pursuant to Your Honor's request during the March 13, 2015 telephonic conference that the parties address additional issues with respect to the settlement of this matter, and provide further explanation to this Court why it should find the proposed settlement fair, reasonable, and adequate. Initially, Plaintiffs note that the parties shared their respective letters prior to submission so as to avoid burdening this Court with duplicative explanations. Thus, Plaintiffs join in several explanations made in Defendants' submission as outlined below.

**The Proposed Settlement is Substantively Reasonable**

Plaintiff Casey O'Jeda initiated this action on August 13, 2013 asserting claims on behalf of himself and other similarly situated individuals ("Plaintiffs") pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207 and 216(b), New York Labor Law New York Labor Law §§ 650 *et seq* and 663; New York Labor Law § 190 *et seq*.; and 12 New York Codes, Rules and Regulations § 142-2.1 to recover unpaid minimum wages that Plaintiffs alleged they were owed for work they performed on behalf of Defendants. Plaintiff Karina Reynaga joined the action on April 11, 2014, also asserting claims for unpaid minimum wages on behalf of herself and other similarly situated Plaintiffs pursuant to the FLSA, and under California Labor Code §§ 221, 223, 1194, 1194.2, 1197; Cal. Unlawful and/or Unfair Business Practices (Bus. & Prof. Code §§ 17200-17208); and Cal. Industrial Welfare Commission ("IWC") Wage Orders.

Plaintiffs alleged that Defendants engaged in an unlawful scheme to misclassify Plaintiffs as unpaid interns and refused to pay them any wages for work they performed, which was customarily performed by Defendants' paid employees. As a result, Defendants




were able to increase their profits by obtaining the benefit of free labor, and hiring unpaid workers to complete necessary tasks.[1]

By way of example, Named Plaintiff Casey Ojeda worked for Viacom from approximately September 2011 through January 2012 as an unpaid intern in the Mobile Development Department. Ojeda testified that his typical duties consisted of updating and rebooting Defendants' website, coding, cropping images for the carousel, formatting spreadsheets, updating comedy shows, updating new articles for Spike TV, and building a reboot site and mobile web page for the Colbert Report. Ojeda was already skilled at web design and coding before his internship, and he alleged that he performed the same work as paid employees in his department, yet Ojeda was not paid any wages for this work.

Named Plaintiff Karina Reynaga worked for Viacom from approximately January 2012 through May 2012 as an unpaid intern in the Human Resources Department at Viacom's Santa Monica, California office. Reynaga testified that her duties consisted of data entry, preparing packages to mail, shredding documents, revamping the new-hire booklet for interns, organizing resumes, phone interviews with incoming intern applicants, scheduling for HR recruiters and serving as the department's receptionist. Reynaga was already familiar with the HRIS (PeopleSoft) system used by Viacom prior to her internship. Reynaga also spoke with other interns in various departments who were disappointed they were assigned elementary tasks and administrative work. Reynaga alleged that she and the other interns performed the same work as paid employees in their departments, yet they were not paid.

The Named Plaintiffs' claims were corroborated by the sworn testimony of opt-in Plaintiffs Nicole Rosinsky and Nikhil Kasbekar. Rosinky was employed by Viacom as an intern in the New York office in the Human Resources Department ("HR") from approximately June 2012 through August 2012. Rosinsky's typical duties consisted of information analysis, data entry, creating and pulling reports, upgrading HR's PeopleSoft software and collecting data to be used by other paid employees in the department. Kasbekar worked as an intern in the Marketing Department from approximately September 2012 through November 2012 and performed tasks such as delivering tapes to other departments, updating powerpoint presentations, marketing calendars, property one sheets and brand documents which were used by the sales team to support their work. Rosinsky and Kasbekar also performed similar work as paid employees in their respective departments, but were not paid.

These Plaintiffs attested that they performed free labor that benefited Viacom while they only received the type of benefits one would receive from a regular job, such as being able to list Viacom on a resume. They further stated that, aside from an initial orientation meeting, Viacom did not provide them with formal training sessions or educational seminars, nor were they provided with job shadowing opportunities. Plaintiffs alleged that

[1] Notably, in June 2013, Viacom changed its internship policies, and interns are now paid "at a standard competitive hourly rate" for their work.




Defendants uniformly enforced these unlawful policies and practices against unpaid interns at all of Defendants' locations.

On April 4, 2014, this Court granted Plaintiffs' motion for collective certification and authorized publication of notice to approximately 6000 potential claimants giving them until September 12, 2014 to join ("opt-in") this action. During the opt-in period, the parties engaged in substantial discovery including depositions of the Named Plaintiffs and opt-in Plaintiffs Rosinsky and Kasbekar, the exchange of pre-class certification paper discovery, and review of questionnaires and documents submitted by other opt-in plaintiffs.

At the close of the opt-in period, 300 claimants had filed consents to join the action. The parties, cognizant of the substantial risks and costs associated with continuing to litigate Plaintiffs' claims, began to discuss the potential settlement of this case. The parties continued these discussions over the next five months, engaging in multiple telephonic and in-person settlement conferences.

During these discussions, the parties fully discussed the issues in this matter, and weighed the risks and circumstances associated with prosecuting Plaintiffs' claims, the potential certification of a Rule 23 class action, Defendants' anticipated motion to de-certify the collective action, the strength of Defendants' defenses and the uncertainty surrounding the Second Circuit's anticipated decisions in the *Glatt v. Fox Searchlight Pictures*, 13-4481-cv, and *Wang v. Hearst*, 13-4480-cv appeals. These discussions proved beneficial in reaching an agreement that all parties considered to be fair and reasonable, and was approved by the Named Plaintiffs.

**Calculation of the Settlement Payment and Administration Costs**

The settlement payment to participating claimants amounts to $577 less applicable fees, costs and tax withholdings. This number represents approximately 80 hours multiplied by a minimum wage rate of $7.25 per hour, or 8 hours per week for a ten week period. The parties felt this was a reasonable compromise based upon the internship program policy that interns work two full days for a minimum of 10 full weeks, thus, the settlement payment represents 50% of the typical intern schedule.

The payment is then reduced to $505 after $72 is allocated towards proposed professional fees and costs ($72 x 12,500 class members = $900,000). While it is anticipated that not all 12,500 class members will join in this settlement, Defendants have agreed to pay Class Counsel fees and costs totaling no more than $900,000 from the settlement fund. Class Counsel will then pay the costs for administering the settlement from the $900,000, along with PAGA penalties and any service awards that are granted.[2]

[2] PAGA penalties are penalties paid to the California Labor and Workforce Development Agency ("LWDA") pursuant to the California Private Attorney General Act of 2004. Section 3.2 of the Settlement Agreement states that the parties will give written notice by certified mail to the LWDA of the allegedly violated provisions of PAGA, including the facts and theories to support the alleged violations. Section 9.1(E) further provides that a payment of up to $25,000 shall be made to the LWDA by Class Counsel, representing the




The parties estimate the costs for administering the settlement will be no more than $50,000, and that the PAGA penalties shall be no more than $25,000, however, should these costs and penalties total more than the parties have estimated, Class Counsel shall pay these additional amounts from its $900,000 fee.

**Section 9.4 Settlement Amounts Payable as Attorney's Fees and Costs**

The proposed settlement agreement provides that Class Counsel will petition the Court for an award of attorneys' fees and costs of no more than $900,000, less an amount equal to the Service Awards and PAGA penalties, or 12.5% of the Gross Settlement Amount.[3] During the March 13th telephone conference, Your Honor highlighted Section 9.4(B), which states that any fees and costs sought by Class Counsel but not awarded shall be returned to Defendants. Plaintiffs respectfully submit that this was a drafting error and the parties have now corrected the language to state that any fees and costs sought by Class Counsel but not awarded shall be distributed proportionately to Participating Claimants up to an additional $100.00 per Participating Claimant, with any remaining amount paid to The Legal Aid Society in New York City as a charitable donation in the name of Viacom.

**The Anticipated Decisions from the Second Circuit in *Hearst* and *Glatt***

Plaintiffs join in Defendants' submission on this topic and respectfully submit that this Court should not disturb the parties' agreement no matter the Second Circuit's decisions in the *Hearst* and *Glatt* appeals. The parties entered into good-faith, arms length negotiations on the current state of the law that resulted in a settlement that the parties consider to be fair and reasonable. For all of the reasons stated in Defendants' submission, Plaintiffs join in the request that this Court not disturb the settlement based on any subsequent legal precedent.

**Revisions to the Settlement Agreement, Notice and Claim Form**

Plaintiffs further join in Defendants' submission that the parties respectfully submit that the parties have modified the Settlement Agreement, Notice and Claim Form to address the Court's concerns with respect to claimant's ability to provide a utility bill or a college picture identification in lieu of government identification as proof of identity, removing the claimant's social security number from the claim form, deleting the non-disclosure/non-disparagement provision from the Settlement Agreement, removing the federal and state releases of claims from the notice, providing a publicly accessible website for claimants to review the Settlement Agreement, and sending a reminder email to claimants regarding the expiration of any settlement checks that are not promptly cashed.

---

LWDA's 75% share of the settlement attributable to PAGA penalties. In connection with the settlement approval, the LWDA shall be notified by Class Counsel of the existence of the settlement. Should the LWDA object to the amount of this payment, the parties agree to work in good faith to negotiate another agreeable amount.

[3] Plaintiffs shall petition the Court for a total of $14,000 in Service Awards to the Named Plaintiff and two opt-in Plaintiffs, and estimate PAGA penalties to be no more than $25,000.




**Conclusion**

In light of the above, Plaintiffs respectfully request that Your Honor preliminarily approve the settlement, and allow Plaintiffs to publish the notice and claim form.

Respectfully submitted,

____/s/_______________
Lloyd R. Ambinder, Esq.

cc: Lyle Zuckerman, Esq. (via ECF)
Michael J. Goettig, Esq. (via ECF)
Jeffrey K. Brown, Esq. (via ECF)